RESOLUTION TRUST CORPORATION, as Receiver of Nassau Savings and Loan Association, F.A., Plaintiff,

v.

Selma DIAMOND, Ira Kaufman, Jerome Lederer, Peggy Lehman, Susan Solomon Pattullo, Lloyd Ribner, as Executor of the Estate of Muriel Ribner, Deceased, Horace Solomon, Lillian Solomon, Denise Tucker, Angelo Aponte, Commissioner of the Division of Housing and Community Renewal of the State of New York, and Robert Abrams, Attorney General of the State of New York, Defendants.

Robert ABRAMS, Attorney General of the State of New York, and New York State Division of Housing and Community Renewal, Plaintiffs,

v.

RESOLUTION TRUST CORPORATION, Nassau Savings and Loan Association, F.A., Jerome Maron, and Anthony T.S. Conrad, Defendants.

Nos. 91 Civ. 1361 (RLC), 91 Civ. 1683 (RLC).

United States District Court, S.D. New York.

Sept. 3, 1991.

Nixon, Hargrave, Devans & Doyle, New York City, for Resolution Trust Corp., Jerome Maron and Anthony T.S. Conrad; Frank H. Penski, of counsel.

Robert Abrams, Atty. Gen. of State of N.Y., New York City, pro se and for New York State Div. of Housing and Community Renewal; Frederick K. Mehlman and Karen Smith, Asst. Attys. Gen., of counsel.

Wien, Malkin & Bettex, New York City, for Selma Diamond, Ira Kaufman, Jerome Lederer, Peggy Lehman, Horace Solomon, Lillian Solomon and Denise Tucker; Robert Machleder, of counsel.

Buchwald & Kaufman, New York City, for Susan Solomon Pattullo; Don D. Buchwald, of counsel.

Behar & Greer, New York City, for Lloyd Ribner, executor; Leon I. Behar, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

In a previous opinion, *Resolution Trust Corp. v. Diamond*, 137 F.R.D. 634 (S.D.N.Y.1991) (Carter, J.) [hereinafter *RTC*], with which familiarity is assumed, the court ruled, among other things, that the Resolution Trust Corporation (the "RTC") had failed to sustain its initial burden of showing that the 92 documents it withheld from the Attorney General (the "A.G.") were covered under the attorney-client privilege, the deliberative-process privilege and/or the work-product rule. Nonetheless, in the interest of fairness, the court granted the RTC leave to reassert its claims of privilege.

The RTC has since provided more detailed information about each of the documents in question, has renumbered its index of withheld documents, and has added a few additional documents to the index, bringing the total number of documents withheld to 98. *See* Declaration of Jose P. Ceppi, July 17, 1991, app. (Revised Index of Privileged Documents); Letter of Frank Penski, Esq. to Frederick K. Mehlman, Esq., July 30, 1991, enclosure (addenda to Revised Index). The A.G. has decided not to contest the RTC's claim of attorney-client privilege, or has otherwise decided not to press its demand for production, with respect to 37 of these (nos. 8, 13, 18, 20–22, 24, 27, 29, 30–35, 37, 39, 41, 43, 46–47, 49, 58, 64, 66–67, 71, 78, 80, 82, 85, 88, 90–93 & 95).[1] *See* Affirmation of Frederick K. Mehlman, July 24, 1991, app. (Attorney

---

1. The A.G. also does not seek the legal memorandum attached to item number 50, nor does he seek certain allegedly segregable information embedded in several other documents.

General's Objections to RTC Privilege Claims). In addition, subject to the proviso that the RTC does not waive any privilege that it could otherwise assert, the RTC has agreed to produce two documents (nos. 38 & 63), as well as portions of three other documents (attached prior budget in item no. 11, attached listings of taxpayer costs and of institutions in item no. 31, and attachments in item no. 46), the latter two of which overlap with those documents that the A.G. is not challenging. All in all, questions of privilege with respect to 59 documents remain for the court's resolution.

## I. *Attorney–Client Privilege*

■■■ The RTC has invoked the attorney-client privilege with respect to all of the 59 documents now in dispute, except for items 10–11, 14, 16–17, 38, 50, 52, 60, 62–63 and 94.[2] As the court has previously noted, the holder of the privilege must show that it made the communication in confidence to an attorney (or the attorney's subordinate) primarily for the purpose of obtaining legal services and not for the purpose of committing a crime or a tort. *RTC, supra*, 137 F.R.D. at 642 (quoting *Colton v. United States*, 306 F.2d 633, 637 (2d Cir.1962)). The privilege also extends to communications from counsel to client for the purpose of giving legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 390, 101 S.Ct. 677, 685, 66 L.Ed.2d 584 (1981); *Gould Inc. v. Mitsui Mining & Smelting Co.*, 825 F.2d 676, 679 (2d Cir. 1987). "[S]ince the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose. Accordingly it protects only those disclosures—necessary to obtain informed legal advice—which might not have been made without the privilege." *Fisher v. United States*, 425

U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976) (citations omitted).

■■■ The court has closely scrutinized RTC's explanations for the documents which it claims are covered under the attorney-client privilege, as well as the A.G.'s specific objections to RTC's assertions of the privilege. Chief among these objections is the A.G.'s argument that many of the documents appear to have been addressed to lawyers in their roles as policy-makers and not as RTC's attorneys (nos. 1, 2, 23, 28, 48, 51, 55–57, 59, 75, 77 & 84), or were simply routed through the offices of RTC's attorneys (nos. 3, 25 & 28), and that, therefore, the attorney-client privilege does not apply. The court recognizes that the attorney-client privilege does not normally protect communications between client and counsel where counsel are acting as regulatory decision-makers rather than as attorney advisors, *see Mobil Oil Corp. v. Dep't of Energy*, 102 F.R.D. 1, 9–10 (N.D.N.Y.1983), *cited in RTC, supra*, 137 F.R.D. at 643; *Coastal Corp. v. Duncan*, 86 F.R.D. 514, 521 (D.Del.1980), and that the privilege does not shield documents merely because they were transferred to or routed through an attorney. *Fisher, supra*, 425 U.S. at 403–04, 96 S.Ct. at 1577–78; *Gould, supra*, 825 F.2d at 679–80; *Mobil Oil Corp., supra*, 102 F.R.D. at 9–10, *cited in RTC, supra*, 137 F.R.D. at 643.

Citing no legal authority, the A.G. also asserts that documents listed in the index with the notation that there was "legal concurrence" by RTC's counsel (nos. 5, 6 & 44), as well as documents prepared by RTC's attorneys relating to a legislative inquiry rather than to litigation (nos. 65 & 86), do not come within the ambit of the attorney-client privilege. Finally, in numerous instances (nos. 4, 15, 19, 25–26, 36, 40, 50, 68–69, 73, 74, 76–77, 79, 81, 83 & 84), the A.G. seeks production of only those portions that are not covered by the attorney-client privilege.

---

2. The RTC has also invoked the attorney work-product rule and the deliberative-process privilege with respect to many of these same documents. Since the attorney-client privilege is an absolute privilege while the work-product rule and deliberative-process privilege are quali-

fied protections, the documents for which the RTC has asserted either or both of these qualified protections in addition to the attorney-client privilege will be considered and entirely disposed of, where possible, on the basis of only the attorney-client privilege.

■ Upon careful consideration of the RTC's descriptions of these documents, on the one hand, and the various objections raised by the A.G., on the other, the court concludes that the items in the revised index numbered 1-4, 7-8, 22-23, 47-48, 51, 55-59, 64-65, 68-70, 73-75, 81, 83-84, 86-87, 89 and 98, are direct, privileged attorney-client communications or contain privileged attorney-client communications that appear to be so inextricably intertwined with the rest of the text that they cannot be separated. *See Hopkins v. United States Dep't of Hous. & Urban Dev.*, 929 F.2d 81, 85 (2d Cir.1991) (discussing feasibility of redaction).[3] These documents comprise the RTC's written requests for legal advice from its counsel (nos. 1-2, 8); legal advice, opinion or strategy memoranda generated by in-house and outside counsel (nos. 3-4, 47, 68, 73-75, 83, 86 & 87); documents prepared based upon the substance of counsel's opinion or advice (nos. 7, 69 & 84), reports of attorney-client communications (nos. 56-59, 64, 70 & 98), and drafts of documents prepared by counsel (nos. 22-23, 48, 51, 55, 65, 81 & 89). Accordingly, these are absolutely privileged.

■ While privileged attorney-client communications, and/or attorney work-product material, are contained in the items numbered 5-6, 9, 12, 15, 19, 25-26, 28, 36, 40, 42, 44-45, 61, 76-77, 79, 96 and 97, it appears that these documents can be redacted so as both to preserve the privilege and to disclose relevant unprivileged information to the A.G. *See Hopkins, supra,* 929 F.2d at 85. Therefore, the RTC shall provide these documents to the A.G., but may excise portions that discuss, incorporate or refer to documents that the court has determined are absolutely privileged attorney-client communications (e.g., items numbered 5-6 and 9 should be redacted to exclude reference to item #4) as well as portions that are identified in the revised index as discussing, incorporating or referring to legal opinions rendered by counsel and/or confidential communications made by RTC to counsel for the purpose of obtaining legal advice. For example, item #12 should be redacted to exclude references to "legal opinion of RTC counsel as to legal issues ...," item #15 should exclude "discussion of legal advice received from RTC counsel ...," item #19 should exclude "referral of legal matters to outside counsel," item #25 should exclude "discussion of privileged legal opinions of outside counsel as to RTC statutory repudiation ...," item #26 should exclude "discussion of litigation prospects," etc.

The court has concluded that the remaining documents (nos. 53-54 & 72) are not covered by the attorney-client privilege. The RTC has not made a sufficient showing that they consist of or contain privileged attorney-client communications. The descriptions of these documents show that they were neither written by nor addressed to any RTC attorney, and are inadequate to persuade the court that privileged attorney-client communications are paraphrased in or otherwise incorporated into the main text of the documents. *See RTC, supra,* 137 F.R.D. at 642-43; *Hopkins, supra,* 929 F.2d at 85.

## II. *Attorney Work–Product Rule*

■ Under the Federal Rules of Civil Procedure, the court must protect against disclosure "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Rule 26(b)(3), F.R.Civ.P. Nevertheless, the court may order production of such material "upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the

---

3. The RTC argues that the requirement of producing segregable non-privileged portions of documents containing privileged material is solely a creature of the Freedom of Information Act, 5 U.S.C. § 552(b), which is not applicable here. There is no merit to this contention. Material that is otherwise discoverable may not be shielded from discovery merely because it is included in the same document with severable privileged material. Rather, the court will order the document produced with the privileged portions excised. *See, e.g., In re American Tobacco Co.*, 880 F.2d 1520 (2d Cir.1989); *cf. Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947).

substantial equivalent of the materials by other means." *Id.* Moreover, the work-product rule does not bar disclosure of "relevant and nonprivileged facts [that are] hidden in an attorney's file ... where production of those facts is essential to the preparation of one's case." *Hickman v. Taylor,* 329 U.S. 495, 511, 67 S.Ct. 385, 394, 91 L.Ed. 451 (1947).

■ The RTC has asserted that the work-product rule protects items numbered 11, 16, 17, 52–54, 60, 62, and 94 from discovery. The work-product portions of item number 11, a letter from the RTC's managing agent to the RTC case management technician, can be excised from the document. Therefore, the redacted version of the letter must be produced. *See id.; Hopkins, supra,* 929 F.2d at 85. As to the work-product portions of the letter, the A.G. has not made a showing of "substantial need" or "undue hardship" as required by Rule 26(b)(3), F.R.Civ.P.; therefore, those portions are protected from discovery.

■ The RTC has already agreed to produce the attached prior budget to item number 11, but refuses to produce the attached proposed four-page amendment to the budget. With respect to the latter attachment, as well as items numbered 16, 17, 52–54, 60 and 62, the RTC has once again failed to sustain its burden of showing that these documents are attorney work-product in the first place. It has not given any indication of how these documents may reveal "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Rule 26(b)(3), F.R.Civ.P.; *see Upjohn, supra,* 449 U.S. at 398, 101 S.Ct. at 687; *In re Grand Jury Investigation,* 599 F.2d 1224, 1229 (3d Cir.1979) (quoting 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2024, at 198 (1970)). Since these documents appear to be relevant information for which the A.G. has substantial need in the preparation of his case, and moreover, since the RTC has twice failed to articulate the information necessary to support its contention that these documents are in fact attorney work-product, fairness dictates that they must now be turned over to the A.G.

■ The RTC provides a bit more information as to its invocation of the work-product rule for item number 94, a memorandum regarding background information on a tenant at the RTC's 444 East 57th Street property prepared by the RTC Northeast Consolidated Office Investigations "in anticipation of litigation," but again fails to sustain its initial burden. First, it is still unclear whether the investigation was even conducted by counsel or upon the direction of counsel. More important, there is nothing to indicate that the memorandum contains counsel's thought processes, opinions and the like. Thus, given the RTC's repeated failure to substantiate its claim of work-product protection, item number 94 should be produced to the A.G.

### III. *Deliberative–Process Privilege*

■ As noted in the court's earlier opinion, government agencies enjoy a qualified privilege against disclosure of predecisional, deliberative, confidential government documents. *RTC, supra,* 137 F.R.D. at 640.

From the descriptions provided in the revised index, it is clear that certain of the documents as to which RTC purports to assert the privilege are neither predecisional nor deliberative, either because they involve mere instructions to subordinate officials as to the implementation of policy (nos. 16, 17 & 19) or because they contain purely factual information (no. 94). *See RTC, supra,* 137 F.R.D. at 641 (factual materials and application of existing policy not privileged). Other documents, consisting of recommendations from high-level RTC officials to RTC committees or boards regarding proposed policies (nos. 5–6, 25, 44, 50, 52–54, 60–62, 77 & 79), minutes of RTC committee meetings (nos. 14, 96 & 97), or notes regarding meetings among RTC officials (no. 26), appear to consist largely of predecisional and deliberative material, but they may possibly contain some segregable factual material. The index de-

scriptions do not make clear whether the remainder of the documents, consisting of intra-agency communications and memoranda to the file (nos. 10–12, 15, 28, 36, 40 & 76), contain predecisional, deliberative material.

However, the RTC·has not given the court any reason to believe that the head of the agency—namely, David C. Cooke, the Executive Director of the RTC—has inspected the individual documents and determined that the public interest in confidentiality (as distinct from the government's interest in this litigation) outweighs the public interest in disclosure. Rather, Cooke has merely asserted that he personally determined that the documents were predecisional and deliberative. Declaration of David C. Cooke, July 17, 1991, ¶¶ 13–14. The expertise of the agency head is not needed merely to determine whether the documents are predecisional and deliberative; rather, the agency head is called upon to exercise discretion to determine whether the public interest in confidentiality outweighs the public interest in disclosure. *See RTC, supra,* 137 F.R.D. at 641–42; *Resident Advisory Bd. v. Rizzo,* 97 F.R.D. 749, 752 (E.D.Pa.1983); *Pierson v. United States,* 428 F.Supp. 384, 395 (D.Del.1977); *see also United States v. Reynolds,* 345 U.S. 1, 8 n. 20, 73 S.Ct. 528, 532 n. 20, 97 L.Ed. 727 (1953).

To be sure, Cooke's declaration states: "It has been my policy that documents which are part of the deliberative and decisional processes of the RTC are confidential and privileged, and are not to be disclosed to third parties." Declaration of David C. Cooke, *supra,* ¶ 10. However, this blanket approach, asserting the privilege for all predecisional, deliberative documents, is unacceptably inflexible. *See United States v. O'Neill,* 619 F.2d 222, 227 (3d Cir.1980) ("The indiscriminate claim of privilege may in itself be sufficient reason

to deny it"); *see also United States v. Nixon,* 418 U.S. 683, 706, 94 S.Ct. 3090, 3106, 41 L.Ed.2d 1039 (1974). The deliberative process privilege presupposes a review to determine, document by document, whether the assertion of the privilege is justified in each instance. *See O'Neill, supra,* 619 F.2d at 226–27; *RTC, supra,* 137 F.R.D. at 642–43; *Rizzo, supra,* 97 F.R.D. at 752–53; *Coastal Corp., supra,* 86 F.R.D. at 518; *Pierson, supra,* 428 F.Supp. at 395.

RTC cites *In re Consolidated Litigation Concerning International Harvester's Disposition of Wisconsin Steel,* 1987 U.S. Dist. LEXIS 10912, *22, 1987 WL 20408, *8, No. 81 C 7076 (N.D.Ill. Nov. 20, 1987), as stating that the "identification and description of the documents sought is [a] more substantive concern" than the requirement that the privilege be asserted by the agency head. In effect, RTC continues to dispute the court's earlier ruling that the deliberative process privilege must be asserted by the head of the agency or by a designated high-ranking subordinate. *RTC, supra,* 137 F.R.D. at 641.

In the absence of "a clear conviction of error on a point of law," the court will not reconsider a legal conclusion reached at an earlier stage of the same proceeding. *Zdanok v. Glidden Co.,* 327 F.2d 944, 953 (2d Cir.), *cert. denied,* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964); *Railway Labor Executives' Ass'n v. Metro–North Commuter R.R. Co.,* 759 F.Supp. 1019, 1021 (S.D.N.Y.1990) (Carter, J.). Although there is some authority to the contrary, *e.g., United States Dep't of Energy v. Brett,* 659 F.2d 154, 155 (Temp. Emer.Ct.App.1981), *cert. denied,* 456 U.S. 936, 102 S.Ct. 1992, 72 L.Ed.2d 456 (1982), the court's ruling requiring assertion of the privilege by the head of the agency is supported by ample authority and sound reasoning.[4] The court stands by its ruling that the deliberative-process privilege must

---

4. *See, e.g., Northrop Corp. v. McDonnell Douglas Corp.,* 751 F.2d 395, 405 n. 11 (D.C.Cir.1984); *O'Neill, supra,* 619 F.2d at 225–26; *Association for Women in Science v. Califano,* 566 F.2d 339, 347 (D.C.Cir.1977); *Mary Imogene Bassett Hosp. v. Sullivan,* 136 F.R.D. 42, 44 (N.D.N.Y.1991); *United States v. Board of Educ.,* 610 F.Supp. 695,

698 (N.D.Ill.1985); *Mobil Oil Corp., supra,* 102 F.R.D. at 5–6; *Rizzo, supra,* 97 F.R.D. at 752; *Pierson, supra,* 428 F.Supp. at 395; *CACI Field Servs., Inc. v. United States,* 12 Cl.Ct. 680, 687 n. 7 (1987); *see also Reynolds, supra,* 345 U.S. at 7–8, 73 S.Ct. at 531–32 (state secrets privilege).

**604**

be personally asserted by the head of the agency or by a designated high-ranking subordinate.

In addition, RTC has failed to meet the requirement that it provide "precise and certain" reasons for its decision to withhold the documents, *see RTC, supra,* 137 F.R.D. at 641, other than stating a blanket policy of nondisclosure of predecisional, deliberative documents. Indeed, Cooke's affidavit states:

> [T]he release through discovery of documents protected by the deliberative process privilege would severely harm the RTC's ability to make determinations on controversial issues. If I, or those on whose judgment and input I depend, were to understand that deliberative, decisional documents are to be disclosed, many documents, or at least the view, opinions, recommendations and judgments they contain, would not be created. The RTC and the public would be deprived of the free flow of ideas and proposals to its decision makers on which good government depends.

Declaration of David C. Cooke, *supra,* ¶ 12. However, this is merely a paraphrase of the rationale for the deliberative-process privilege described in the case law. *See, e.g., EPA v. Mink,* 410 U.S. 73, 87, 93 S.Ct. 827, 836, 35 L.Ed.2d 119 (1973); *In re Franklin Nat'l Bank Sec. Litig.,* 478 F.Supp. 577, 583 (E.D.N.Y.1979); *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,* 40 F.R.D. 318, 324–25 (D.D.C.1966), *aff'd on op. below sub nom. V.E.B. Carl Zeiss, Jena v. Clark,* 384 F.2d 979 (D.C.Cir.), *cert. denied,* 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967). As such, it is conclusory. Nowhere does Cooke explain why, particularly, the documents in question here are so sensitive that disclosure would compromise the agency decision-making pro-

cess to such a degree that the public interest in full disclosure is outweighed.

■■■ A "broad, undifferentiated ... generalized interest in confidentiality," *Nixon, supra,* 418 U.S. at 706, 94 S.Ct. at 3107, is insufficient to assert the deliberative-process privilege. *O'Neill, supra,* 619 F.2d at 227; *see also, e.g., Rizzo, supra,* 97 F.R.D. at 753 (bare assertion of privilege insufficient). RTC does not contend that giving more precise reasons would in any way compromise the confidentiality of the documents.

The RTC cites *United States v. Board of Education,* 610 F.Supp. 695 (N.D.Ill.1985), which held that a "brief and conclusory" statement that documents are predecisional and deliberative is sufficient to assert the privilege, *id.* at 699, although it recognized, without discussion, the requirement that the responsible official must give "precise and certain reasons." *Id.* at 698.[5] That ruling renders the "precise and certain reasons" requirement entirely meaningless. The court declines to follow such an implausible reading of that requirement.

The RTC's citation of *Salisbury v. United States,* 690 F.2d 966, 972 (D.C.Cir.1982), a case involving the state-secrets privilege, is misleading. Contrary to the assertion of RTC's counsel, the court in *Salisbury* did not uphold a bare assertion of "national security" as satisfying the requirement of reasonable specificity. Rather, the agency in that case had set forth precise, certain and plausible reasons explaining how and why disclosure of the material would harm the national security.[6]

The RTC's blanket policy of nondisclosure of predecisional, deliberative documents shirks the agency's responsibility of determining the need for confidentiality, and would force the court to bear the bur-

---

**5.** The "precise and certain reasons" requirement is well established in the case law. *See, e.g., O'Neill, supra,* 619 F.2d at 225–26; *Mary Imogene Bassett Hosp. v. Sullivan,* 136 F.R.D. 42, 44 (N.D.N.Y.1991); *Mobil Oil Corp., supra,* 102 F.R.D. at 5–6; *Rizzo, supra,* 97 F.R.D. at 752; *Coastal Corp., supra,* 86 F.R.D. at 519; *Black v. Sheraton Corp. of Am.,* 371 F.Supp. 97, 101 (D.D.C.1974); *cf. King v. United States Dep't of Justice,* 830 F.2d 210, 218 (D.C.Cir.1987); *Salis-*

*bury v. United States,* 690 F.2d 966, 971–72 (D.C.Cir.1982).

**6.** In addition, the interest in national security underlying the state-secrets privilege involved in *Salisbury* may well call for greater judicial deference to the executive branch than the interest in deliberative confidentiality underlying the deliberative-process privilege involved here.

den of making the determination without guidance from the agency. The court would be forced "to become [a] mindreader[ ]—to discern without guidance ... the reasons for [RTC's privilege claims], and then [to use] those assumptions to determine whether the documents may be justifiably withheld." *Mobil Oil Corp., supra,* 102 F.R.D. at 6, *quoted in RTC, supra,* 137 F.R.D. at 642; *see also O'Neill, supra,* 619 F.2d at 227; *Black v. Sheraton Corp. of Am.,* 371 F.Supp. 97, 101 (D.D.C.1974). This is a task the court need not, cannot and will not accept.

■ Cooke's failure to review the documents individually and to provide precise and certain reasons for withholding them bars the assertion of the deliberative-process privilege. *See, e.g., O'Neill, supra,* 619 F.2d at 227 (indiscriminate claim of privilege may be reason to deny it); *Black, supra,* 371 F.Supp. at 101 (improper assertion of privilege is no assertion of privilege). Even if the court were to disregard this failure, in order to give the RTC the benefit of the doubt and accept its submissions for what they are worth, the record before the court would still strongly support the A.G.'s argument that the interest in disclosure outweighs RTC's qualified privilege. The factors to be balanced in making this determination include:

(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the "seriousness" of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Franklin Nat'l Bank, supra,* 478 F.Supp. at 583, *quoted in RTC, supra,* 137 F.R.D. at 642.

■ As the court has noted in its earlier opinion, the considerations that RTC took into account in its deliberations are directly in issue in this case, making the contested evidence highly relevant by the very fact that it is deliberative. *RTC, supra,* 137 F.R.D. at 642–43. Moreover, the information is apparently not available from other sources. *Id.* Thus, the interest in just and accurate judicial factfinding weighs heavily in favor of disclosure. Furthermore, because compliance with a statutory mandate regarding the deliberative process is at issue, the public interest in preserving good government will be advanced by disclosure.

The need for full disclosure is underscored by the seriousness of the litigation, which pits the public policy of the State of New York against a nationwide policy of a federal agency, and which could have significant economic effects on hundreds or possibly thousands of tenants living in RTC-owned units, as well as on the New York apartment-rental market as a whole. *See id.,* at 638–39. The fact that the party seeking discovery is a high-level state official seeking to enforce state law further bolsters this conclusion. *Cf. O'Neill, supra,* 619 F.2d at 230. The RTC's role in the litigation, as a plaintiff seeking judicial approval of its decision to repudiate the leases of some of its tenants, also tends to open the door to discovery of RTC's decision-making processes.[7]

On the other side of the balance rests RTC's naked assertion of the general interest in keeping its documents secret to safeguard against the possibility of future timidity by government employees, together with its descriptions of them as policy recommendations, committee-meeting minutes, and the like. The RTC has not given the court any reason to believe that it has a particularly strong interest, beyond that of any government agency in regard to its deliberative materials, in keeping any or all of these documents confidential. *See Rizzo, supra,* 97 F.R.D. at 753.

---

7. The view that a government agency waives its deliberative-process privilege by becoming a plaintiff, *see United States v. Gates,* 35 F.R.D. 524, 528 (D.Colo.1964), has not been widely accepted. *See, e.g., United States v. Hooker Chems. & Plastics Corp.,* 114 F.R.D. 100, 102 (W.D.N.Y.1987). However, the government's role as plaintiff remains a consideration to be weighed in determining whether the privilege is overcome by the need for disclosure. *See id.; Franklin Nat'l Bank, supra,* 478 F.Supp. at 583.

For the most part, the RTC's revised index adequately informs the court of the contents of the documents, so that an *in camera* inspection would be a waste of time. What is missing is RTC's reason for withholding them. Of course, the court is reluctant to order discovery of materials when a federal agency asserts that their disclosure may cause harm to the public. At the same time, "the court cannot accept the [RTC's] assertions of public interest *ipse dixit.*" *O'Neill, supra,* 619 F.2d at 231. In this case, the RTC has twice had the opportunity to provide the court with precise and certain reasons why disclosure of the documents would be harmful, and it has both times failed to do so. On this basis, the court is confident that disclosure of the documents would have no substantial adverse effect on the public.

In view of what is at stake in this litigation, the court concludes that the public interest in full disclosure of the materials strongly outweighs the public interest in confidentiality. Good government would be advanced, not hindered, by allowing discovery. Accordingly, the RTC's assertion of the deliberative-process privilege is rejected.

## IV. *Conclusion*

The court has determined that the items in the revised index numbered 1–4, 7–8, 22–23, 47–48, 51, 55–59, 64–65, 68–70, 73–75, 81, 83–84, 86–87, 89 and 98, are protected in their entirety by the attorney-client privilege or the work-product rule; therefore, RTC is granted a protective order against their discovery. The court has also determined that the documents numbered 10, 11 (attached proposed budget amendment only), 14, 16, 17, 50 (except attached legal memorandum), 52–54, 60, 62, 72 and 94 are not protected by any privilege or by the work-product rule; therefore, the RTC is ordered to produce them. The RTC is also ordered to produce redacted versions of the documents numbered 5–6, 9, 11 (except attached proposed budget amendment and attached prior budget), 12, 15, 19, 25–26, 28, 36, 40, 42, 44–45, 61, 76–77, 79, 96 and 97 after excising material that is covered by the attorney-client privilege or by the

work-product rule. There is no dispute between the parties as to the remaining documents, numbered 8, 11 (attached prior budget only), 13, 18, 20–22, 24, 27, 29, 30–35, 37–39, 41, 43, 46–47, 49, 50 (attached legal memorandum only), 58, 63–64, 66–67, 71, 78, 80, 82, 85, 88, 90–93 and 95, and the court therefore makes no decision with respect to them.

IT IS SO ORDERED.