James and Joyce FERRELL,
et al., Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al., Defendants.

No. 73 C 334.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 20, 1998.

---

## MEMORANDUM OPINION AND ORDER

LEVIN, United States Magistrate Judge.

Pending is Plaintiffs' motion to compel production of documents. For the reasons set forth below, this Court grants Plaintiffs' motion in part, denies it in part and orders that certain documents be made available to the court for an *in camera* inspection.

### BACKGROUND

This suit was initiated in 1973 when Plaintiffs filed a complaint on behalf of a class of low and moderate income individuals who had purchased homes under §§ 203 and 235 of the National Housing Act, 12 U.S.C. §§ 1709, 1715z (the "Housing Act"), and whose mortgages were in default. Plaintiffs alleged that the United States Department of Housing and Urban Development ("HUD") had violated the Housing Act by failing to provide foreclosure avoidance assistance to the plaintiff class. In *Brown v. Lynn*, 385 F.Supp. 986 (N.D.Ill.1974), the court determined that the Housing Act obligated HUD to provide mortgage foreclosure avoidance assistance to mortgagors in default. *Id.* at 998–99.

In a consent decree entered July 29, 1976, HUD agreed to implement a program to accept assignments of insured mortgages in default in order to provide foreclosure assis-

tance to homeowners experiencing temporary financial distress. *See Ferrell v. Pierce,* 560 F.Supp. 1344, 1348 (N.D.Ill.1983), *aff'd,* 743 F.2d 454 (7th Cir.1984). Thereafter, Plaintiffs periodically objected to HUD's alleged violations of the July 29, 1976 consent decree and, in August 1979, the parties agreed to an Amended Stipulation, which was approved by the court in November 1979. Although HUD's specific duties under the Amended Stipulation terminated in 1984, paragraph 14 provides that HUD's obligation to provide foreclosure avoidance relief survived that termination and that HUD "shall provide assistance or relief in the form of the present assignment program or an equivalent substitute." [1]

On or about January 26, 1996, the President signed into law the Balanced Budget Downpayment Act ("Downpayment Act"), Pub.L. No. 104–99, 110 Stat. 26. Defendants argue that this legislation eliminated HUD's authority to provide a mortgage assignment program, or an equivalent substitute, as referred to in paragraph 14 of the 1979 Amended Stipulation. HUD thus stopped accepting applications for the mortgage assignment program and moved for vacation of the Amended Stipulation on September 27, 1996.

On October 2, 1996, Plaintiffs filed a Motion to Hold Defendants in Civil Contempt and for Sanctions to Effect Compliance and Afford Compensatory Relief. Plaintiffs' contempt claim is essentially three-fold: (1) that HUD breached its good faith obligations under the consent decree by lobbying Congress to legislate away its obligations under the decree; (2) that having obtained the legislation HUD desired, HUD immediately terminated the assignment program without first seeking consent from the court to modify the Amended Stipulation; and (3) that having terminated the program, HUD failed to replace the program with an equivalent substitute. (*See* Pls. Mem. at 7.)

### THE MOTION TO COMPEL

In conjunction with their attempt to acquire relevant discovery with respect to their claim that HUD is in contempt, Plaintiffs served Defendants with Plaintiffs' First Request for Production of Documents Directed to Defendants HUD and Andrew Cuomo, Secretary of HUD. In response, Defendants tendered approximately twenty thousand documents. Defendants, however, have refused to produce numerous documents on the grounds that the documents are protected by the deliberative process privilege, work product privilege and/or attorney-client privilege.[2] Plaintiffs' motion seeks to compel production

---

1. Paragraph 14 of the Amended Stipulation reads:

   Except as provided in this paragraph, the rights and obligations created by this Amended Stipulation shall terminate five years from the date of execution. The termination of the Department's specific obligations under this Amended Stipulation shall not diminish or compromise the Department's obligation construed under the National Housing Act of 1968 to provide foreclosure avoidance relief for mortgagors in temporary financial distress, and the Department shall provide assistance or relief in the form of the present assignment program or an equivalent substitute to permit mortgagors in default on their mortgages to avoid foreclosure and to retain their homes during periods of temporary financial distress.

2. HUD did attempt to initiate efforts to resolve or narrow the discovery dispute. First, HUD offered to produce 158 documents which it withheld under the deliberative process privilege if Plaintiffs would agree to a protective order with regard to the documents. Second, HUD offered to stipulate to the following facts:

   - In communicating with Congress during the summer and fall of 1995, HUD advised and assisted Congress in replacing the mortgage assignment program with other forms of foreclosure avoidance relief for FHA insured mortgages. HUD recommended and supported this legislative change.
   - HUD has not accepted any new applications for the mortgage assignment program since April 26, 1996.
   - HUD's current foreclosure avoidance relief program differs significantly from the mortgage assignment program provided for in the 1979 Amended Stipulation. Specifically, under the new program, no class of individuals is entitled to relief; relief is provided on a case-by-case basis at the discretion of the mortgagee holding the FHA insured loans; and HUD no longer takes assignment of loans in default.

   Plaintiffs did not accept HUD's offer to agree to a protective order or to stipulate regarding the above facts.

of these documents.[3]

## I. THE DELIBERATIVE PROCESS PRIVILEGE.

■ In opposition to Plaintiffs' motion to compel, Defendants first claim that the deliberative process privilege precludes 457 documents from being disclosed. The deliberative process privilege protects "communications that are part of the decision-making process of a government agency." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir.1993). The privilege protects from disclosure "communications made prior to and as a part of an agency determination;" however, "[c]ommunications made subsequent to an agency decision are . . . not similarly protected." *Id.*

The parties agree that courts engage in a two-part analysis in determining whether to uphold the government's claim of deliberative process privilege. First, the court must decide "whether the government has shown that the privilege applies to the documents the government seeks to protect." *K.L., L.F., & R.B. v. Edgar*, 964 F.Supp. 1206, 1209 (N.D.Ill.1997). Then, if the government meets its threshold burden of showing that the privilege applies, the litigant has the burden of showing that it has a particularized need for the documents. *Id.; Farley*, 11 F.3d at 1389.

### A. THE PRIMA FACIE CASE.

■ For the government to satisfy the first step of the analysis, the *prima facie*

existence of the privilege, three things must happen:

(1) the department head with control over the matter must make a formal claim of privilege, after personal consideration of the problem; (2) the responsible official must demonstrate, typically by affidavit, precise and certain reasons for preserving the confidentiality of the documents in question; and (3) the official must specifically identify and describe the documents.

*Edgar*, 964 F.Supp. at 1209. In support of its *prima facie* case, Defendants have provided a detailed declaration of Nicolas Retsinas, HUD's Assistant Secretary for Housing–Federal Housing Commissioner, whom HUD delegated authority, for purposes of this action, to assert the deliberative process privilege.

■ The court's review of Mr. Retsinas' declaration reveals that the declaration meets the government's threshold burden of showing that the privilege applies. Mr. Retsinas' declaration explicitly provides that he "personally reviewed the documents that the agency is withholding from plaintiffs under the deliberative process privilege." (*See* Retsinas Dec. ¶ 7.)[4] Additionally, the declaration specifically identifies and describes the documents for which the privilege is sought by: (1) incorporating a privilege log which provides a description of all of the documents for which Defendants assert the deliberative process privilege; (2) discussing five categories into which many of the privileged documents fall (*see* Restinas Dec. ¶ 19); and (3) providing additional information with regard

---

3. Plaintiffs seek documents, predominately from 1990–1997, discussing, analyzing or otherwise commenting on the mortgage assignment program, including correspondence from Congress to HUD (Pls. Request No. 2), correspondence between HUD and the General Accounting Office (Pls. Request No. 5), correspondence within HUD (Pls. Request No. 3), research (Pls. Request No. 4), statistical information (Pls. Request Nos. 7 and 10), other reports (Pls. Request No. 11), statistical information on the current program (Pls. Request No. 8), and documents relating to actions HUD took or did not take regarding interest rates and to effect negative amortization of assigned loans (Request Nos. 12 and 13).

4. Plaintiffs contest whether Mr. Retsinas performed a legitimate, independent review and

analysis of the documents—as opposed to merely "rubber-stamping" conclusions previously made by HUD's counsel—because the Secretary of HUD signed the letter delegating Mr. Retsinas with the duty of invoking the deliberative process privilege on the same day that Mr. Retsinas signed his declaration setting forth his analysis of such review. Although the official letter delegating Mr. Retsinas the power to assert the privilege bears the same date as the declaration, there is no evidence that Mr. Retsinas could not or did not begin his review prior to that day. Absent additional proof that Mr. Retsinas did not perform the necessary review, Plaintiffs' objection based solely on the timing of the declaration cannot be accepted.

to other documents which could not easily be categorized (*id.* at ¶¶ 20–21).

Mr. Retsinas' declaration also provides the agency's reasons for preserving the confidentiality of the documents in question. The declaration asserts that the withheld documents are pre-decisional, deliberative materials relating to the agency's ongoing administration, evaluation and improvement of the single family mortgage assignment program and other foreclosure avoidance/loss mitigation programs. (*See* Retsinas Dec. ¶ 9.) Mr. Retsinas further sets forth his belief that "disclosure of these documents would impair the free flow of advisory opinions, arguments, conclusions, considerations, and recommendations within HUD, and thus, adversely effect the public interest." (*Id.* at ¶ 23.) In sum, the court's review of Mr. Retsinas' declaration reveals that the government has demonstrated the *prima facie* existence of a privilege with respect to the documents.[5]

## B. *PARTICULARIZED NEED.*

■ Because the government has met its threshold burden of showing that the privilege applies, Plaintiffs have the burden of showing that they have a particularized need for the documents. *See, e.g., Farley,* 11 F.3d at 1389; *Edgar,* 964 F.Supp. at 1209. In undertaking such an analysis, the court balances the plaintiff's need for disclosure against the government's need for secrecy, considering such factors as:

(1) the relevance of the documents to the litigation; (2) the availability of other evidence that would serve the same purpose as the documents sought; (3) the government's role in the litigation; (4) the seriousness of the litigation and the issues involved in it; and (5) the degree to which disclosure of the documents sought would tend to chill future deliberations within government agencies, that is would hinder frank and independent discussion about governmental policies and decisions.

*Edgar,* 964 F.Supp. at 1209 (*citing Farley,* 11 F.3d at 1389).

■ After considering the merits of each parties' contentions raised here and the relevant factors determinative in the particularized need analysis, the court finds that Plaintiffs have a particularized need for the privileged documents that definitively outweighs Defendants' interest in not disclosing them.

Most importantly, Plaintiffs have demonstrated a weighty need for the documents. Plaintiffs' contempt motion argues that as early as December 1993, HUD began lobbying Congress to replace the mortgage assignment program. Plaintiffs allege that— contrary to the terms of the Amended Stipulation (and promises made to the court)[6]— HUD did not seek to make changes in the new legislation that would have rendered the statutory replacement for the mortgage assignment program its substantial equivalent

---

5. The case Plaintiffs rely upon for their assertion that the declaration here deficiently sets forth the reasons why the documents should remain confidential, *Resolution Trust Corp. v. Diamond,* 773 F.Supp. 597, 604 (S.D.N.Y.1991), is distinguishable. In *Diamond,* the director of the RTC conclusorily asserted that the deliberative process privilege precluded production of all predecisional, deliberative documents without individually reviewing the particular documents in question to determine why their production would compromise the agency decision-making process. *Diamond,* 773 F.Supp. at 604–05. By contrast, Mr. Retsinas' declaration maintains that Mr. Retsinas personally reviewed the individual documents at issue and stated his understanding of the effect of the disclosure of those particular documents.

6. Plaintiffs point out that, in 1980, the court placed HUD on notice that lobbying Congress to eliminate the consent decree/mortgage assign-

ment program would violate the consent decree. *See* Transcript of Court Proceedings, March 5, 1980, at 9–12. Certain other evidence does suggest that HUD understood such lobbying could constitute bad faith. Regarding this case, a HUD staff attorney expressly stated in a memo to HUD's general counsel that "proposing a statutory replacement for the Assignment Program which is not its substantial equivalent could be interpreted by the Court as evidence of bad faith." *See Ferrell v. Pierce,* 743 F.2d 454, 459 n. 3 (7th Cir.1984). Indeed, in this case, HUD counsel "acknowledged [to the court] ... that if Congress were to enact legislation inconsistent with continued operation of the consent decree, HUD would come back to [the court] and seek modification of the consent decree before legislative implementation" before legislative implementation. *Id.* at 459. *See also* Transcript of Court Proceedings, March 26, 1980, at 26–27.

and did not return to the district court to seek modification of the decree prior to implementing the statutory changes. In evaluating Plaintiffs' allegations, Judge Coar has stated that "HUD's actions suggest a repudiation of an assurance made to this court and a contumacious disregard of this court's orders." *Ferrell v. United States Dept. of Housing and Urban Dev.*, No. 73 C 334, 1996 WL 680245, at *4 (N.D.Ill. Nov. 21, 1996).

Plaintiffs have demonstrated that the documents withheld by Defendants may lead to relevant evidence regarding Plaintiffs' claims that HUD sought to obtain legislation freeing it from its obligations under the decree, and that HUD failed to replace the assignment program with an equivalent substitute. In particular, the documents may shed further light on the alleged claims of governmental misconduct, *e.g.*, relevant evidence concerning: (1) what HUD understood its obligations under the Amended Stipulation to be and whether HUD took those obligations into account when formulating an alternative legislative program; (2) what programs HUD considered to replace the mortgage assignment program; and (3) whether HUD discussed going back to the court prior to proposing legislation or implementing a new program.[7]

The highly relevant nature of the documents and the government's obvious direct role in the litigation, coupled with the undisputed seriousness of this litigation (and the issues involved) and the fact that Plaintiffs cannot retrieve HUD's decisionmaking process through other means,[8] outweighs the government's claim that the production of the documents will impair the free flow of the communications within HUD.

Despite Defendants' efforts to distinguish it, the case most on point is *United States v. Board of Ed.*, 610 F.Supp. 695 (N.D.Ill.1985). In *Board of Ed.*, the Board of Education and the United States entered into a consent decree. Thereafter, the Board of Education petitioned the court for an order directing the United States to comply with part of the decree. In conjunction with these proceedings, the Board of Education sought documents from the government. The government claimed that the deliberative process privilege precluded certain documents from being produced. In ordering an *in camera* review of the documents (with a strong insinuation that production would be forthcoming), the *Board of Ed.* court stated:

> [i]t is hard to imagine a case in which the government's deliberative process is more relevant or crucial.... [T]his is not the usual "deliberative process" case in which a private party challenges governmental action or seeks documents via the Freedom of Information Act, and the government tries to prevent its decisionmaking process from being swept up unnecessarily into public. Here, the decisionmaking process is not "swept up into" the case, it is the case.... The nature of this unique case is such that the "roads not taken" are as relevant as those taken.

*Board of Ed.*, 610 F.Supp. at 700. Like in *Board of Ed.*, the government's decisionmaking process in this matter—and the corresponding "roads not taken"—is "the case"

---

7. Defendants assert that HUD's internal correspondences are not relevant to Plaintiffs' claim that HUD sought to obtain legislation contrary to the consent decree or that HUD failed to replace the mortgage assignment program with an equivalent substitute because HUD already turned over the relevant documents concerning these inquiries, *e.g.*, communications between HUD and Congress, HUD's current foreclosure plan and the final regulations contained in the Federal Register. This court, however, finds that HUD's internal correspondence could answer relevant inquiries regarding Plaintiffs' contempt motion, including what HUD thought, knew, suspected, considered and intended in performing its actions. Although Defendants argue that such inquiries are unnecessary without a bad faith showing, the court finds that, for discovery purposes, Plaintiffs' allegations sufficiently have demonstrated that the documents could lead to relevant evidence. *See, e.g.*, *United States v. Board of Ed.*, 610 F.Supp. 695, 700, n. 4 (N.D.Ill. 1985) ("[A]llegations of violations of the consent decree are not unlike allegations of governmental misconduct.").

8. Although Defendants argue that Plaintiffs' agreement to HUD's proposed stipulations (*see* footnote 2) would have obviated further discovery, Plaintiffs have demonstrated that Defendants' documents may lead to relevant evidence beyond the stated stipulations.

and is directly relevant and crucial to Plaintiffs' contempt motion.

For the foregoing reasons, the court therefore orders Defendants to produce the documents Defendants have withheld solely pursuant to the deliberative process privilege.

## II. *THE WORK PRODUCT PRIVILEGE.*

■ Defendants claim that the work product doctrine protects 22 documents from being produced. Pursuant to Fed.R.Civ.P. 26(b)(3), "if a party demonstrates that materials in its possession that would otherwise be discoverable were prepared in anticipation of litigation, the materials are considered work product and become subject to a qualified privilege from discovery." *Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 976 (7th Cir.1996). This qualified privilege may only be overcome if the party seeking production demonstrates both a substantial need for the materials and that it would suffer undue hardship in procuring the requested information some other way. *Id.* Fed. R.Civ.P. 26(b)(3) further expressly admonishes courts to give even greater protection against disclosure of *opinion* work product, meaning "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *See also Logan,* 96 F.3d at 976, n. 4; *K.L. v. Edgar,* 964 F.Supp. 1206, 1211 (N.D.Ill.1997) ("[M]ental impressions, conclusions, opinions, or legal theories of an attorney" are "nearly absolutely protected, and can be discovered only in very rare and extraordinary circumstances[.]").

■ Defendants state that eight of the twenty-two documents allegedly protected as work product are "non-opinion work product," *i.e.,* documents that may be produced under Rule 26(b)(3) if the party seeking disclosure demonstrates a substantial need for the documents that cannot be satisfied through other means without undue hardship. The balancing test for substantial need regarding non-opinion work product is similar to the one done for the deliberative process privilege. *See, e.g, Board of Ed.,* 610 F.Supp. at 701. Pursuant to such a balancing test, this court finds, as explained above in conjunction of the deliberative process privilege, that Plaintiffs have a substantial need for the documents that cannot be satisfied through other means without undue hardship. Therefore, the court orders that Defendants produce the documents which Defendants state contain non-opinion work product: document nos. 247, 248, 250, 261, 272, 273, 333, and 366.

Defendants further claim that fourteen of the twenty-two documents alleged to be protected by the work product doctrine are "opinion work product," *i.e.,* documents entitled to heightened protection because they contain the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation. Defendants argue that these documents should be protected because "any discussion of the litigation consequences of any proposed legislation or other foreclosure avoidance alternatives affecting the assignment program operated pursuant to the Amended Stipulation is done 'in anticipation of' this litigation." (*See* Def. Resp. at 22 n. 14.) Plaintiffs, on the other hand, argue that HUD did not prepare these documents in anticipation of litigation; instead, Plaintiffs argue that HUD prepared the documents in order to consider, analyze and advise Congress concerning the possible enactment of various legislative alternatives.

■ The brevity of the description of the documents in Defendants' privilege log which Defendants claim contain opinion work product makes it difficult to discern whether the documents were prepared in anticipation of this litigation or more generally as part of the legislative assistance that HUD provided to Congress. Therefore, this court orders that Defendants produce such documents (nos. 23, 25, 32, 34–36, 38, 251, 259, 261, 317, and 318) for an *in camera* inspection by the court to determine the application of the work-product privilege.[9]

## III. *ATTORNEY-CLIENT PRIVILEGE*

■ Defendants have withheld 37 documents reflecting attorney-client communica-

---

9. Document nos. 21 and 479 need not be produced for the *in camera* inspection because the court finds (*infra* below) that they are protected by the attorney-client privilege.

tions pursuant to the attorney-client privilege. The Seventh Circuit has set forth the elements of the attorney-client privilege as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection may be waived.

*United States v. Evans,* 113 F.3d 1457, 1461 (7th Cir.1997) (citations omitted). The attorney-client privilege protects confidential communications between an attorney and his client made for the purpose of obtaining legal advice. *United States v. Lawless,* 709 F.2d 485, 487 (7th Cir.1983).

[11] Based on the description set forth in Defendants' privilege log, the court concludes that the attorney-client privilege protects the following documents from production: document nos. 8, 21, 51, 54, 98, 120, 121, 123, 236, 252, 253, 355, 444–46, 459, 465, 473, 479, 491, 495, 496 and 498. There are several other documents for which the attorney-client privilege is asserted: document nos. 25, 36, 38, 89, 100, 101, 114, 161, 268, 321, 322, 435, 436 and 490. Because the description of these documents in the privilege log is insufficient to make a *prima facie* showing that the attorney-client privilege protects them, these documents should be produced as part of the *in camera* inspection for a determination of the application of the attorney-client privilege.

### CONCLUSION

For the foregoing reasons, Plaintiffs' motion to compel is granted in part and denied in part. Defendants are hereby directed to produce to Plaintiffs within fourteen (14) days from the date of this opinion all of the documents listed in their privilege log, except for: (1) document nos. 8, 21, 51, 54, 98, 120, 121, 123, 236, 252, 253, 355, 444–46, 459, 465, 473, 479, 491, 495, 496 and 498 which the court finds are protected by the attorney-client privilege and, therefore, shall not be produced; and (2) document nos. 23, 25, 32,

34–36, 38, 89, 100, 101, 114, 161, 251, 259, 261, 268, 317, 318, 321, 322, 435, 436, and 490 which shall be tendered to the court within fourteen (14) days from the date of this opinion for an *in camera* inspection.