*257 Opinión concurrente emitida por el
Juez Presidente Señor Hernández Denton.
Concurrimos con el curso de acción seguido por este Tribunal al revocar la sentencia del Tribunal de Apelaciones que ordenó al foro de instancia examinar copia de una opi-nión legal requerida por la Comisión de Presupuesto y Asignaciones de la Cámara de Representantes al Director Ejecutivo de la Autoridad para el Financiamiento de la In-fraestructura de Puerto Rico (AFI), Ing. Guillermo Riera. Ello, pues del tracto procesal del litigio se desprende que la controversia que le dio lugar se tornó académica antes de que la Cámara de Representantes acudiera al Tribunal de Apelaciones para revisar el dictamen emitido por el foro de instancia. Por ende, el foro apelativo debió desestimar el recurso presentado ante su consideración por haberse tornado académico.
El motivo que dio lugar a la citación hecha por la Comi-sión de Presupuesto y Asignaciones al ingeniero Riera fue la aprobación de las Resoluciones Conjuntas 1884 y 1885, relacionadas con la asignación de fondos a AFI para reali-zar obras y mejoras en municipios y dependencias gubernamentales. En particular, se citó a dicho funcionario para que compareciera a una vista pública en la cual se considerarían estas medidas, pero él se negó asistir. El mismo día en que el tribunal de instancia ordenó al inge-niero Riera que compareciera a la mencionada vista, el re-presentante Angel Pérez Otero, presidente de la referida Comisión, requirió una copia de la opinión legal en controversia. Este requerimiento fue hecho mediante una misiva firmada por el representante Pérez Otero; es decir, no medió Resolución alguna que autorizara una investiga-ción legislativa.
Ante tales circunstancias, el ingeniero Riera presentó al *258 tribunal de instancia una petición para que se le permi-tiera intervenir en el procedimiento de citación instado por la Cámara de Representantes ante dicho foro. Adujo que la opinión legal requerida por la Comisión cameral estaba co-bijada por el privilegio abogado-cliente, pues analizaba la posibilidad de prevalecer en un posible pleito que la Asam-blea Legislativa iniciaría contra AFI. El 19 de enero de 2007 el tribunal de instancia declaró “con lugar” la petición del ingeniero Riera y resolvió que el privilegio invocado por dicho funcionario era “correcto, prima facie”, pues el docu-mento en cuestión estaba protegido por la Regla 25 de Evi-dencia, 32 L.RR.A. Ap. IV. Por ello, el foro de instancia determinó que la opinión en controversia no está sujeta a ser examinada por la Cámara de Representantes.
Posteriormente, la Legislatura aprobó las Resoluciones Conjuntas 1884 y 1885, y el 15 de febrero de 2007 el Go-bernador las firmó, aunque impartió un veto de partidas a ciertas asignaciones hechas en éstas. En el ínterin, la Cá-mara de Representantes solicitó la reconsideración de la determinación del tribunal de instancia. Tras una vista ar-gumentativa, el 13 de marzo de 2007 dicho foro declaró “sin lugar” la moción de reconsideración y se reafirmó en que AFI no tenía que entregar el documento solicitado. La Cámara de Representantes recurrió de dicha denegatoria ante el Tribunal de Apelaciones y, luego de que ese foro devolviera el caso al tribunal de instancia para un examen en cámara de la referida opinión, el ingeniero Riera acudió ante nos.
Un análisis del reseñado tracto procesal ante el tribunal de instancia revela que el proceso de aprobación de las Re-soluciones Conjuntas 1884 y 1885 culminó hace casi dos años, cuando fueron aprobadas. Por ello, las circunstancias que motivaron tanto la citación del ingeniero Riera como el requerimiento de la mencionada opinión legal se desvane-cieron antes de que el Tribunal de Apelaciones resolviera el recurso presentado ante su consideración. Ante esta reali- *259 dad, es forzoso concluir que estamos ante un caso que cesó de ser justiciable, pues no existe una controversia viva y presente que permita expresarnos sobre la procedencia del requerimiento hecho por la Comisión cameral.
Como es sabido, un caso es académico cuando no pre-senta una controversia real o cuando el remedio que pueda dictarse no tendría efecto práctico alguno. San Gerónimo Caribe Project v. E.L.A. I, 174 D.P.R. 518 (2008); P.P.D. v. Gobernador I, 139 D.P.R. 643, 675 (1995); Asoc. de Perio-distas v. González, 127 D.P.R. 704, 719 (1991); E.L.A. v. Aguayo, 80 D.P.R. 552, 584 (1958). Véase, además, San Gerónimo Caribe Project v. E.L.A. I, supra, opinión disi-dente de la Juez Asociada Señora Rodríguez Rodríguez. Ello puede ocurrir cuando durante el trámite del pleito surgen cambios tácticos o judiciales que tornan en ficticia su solución. P.N.P. v. Carrasquillo, 166 D.P.R. 70 (2005); P.P.D. v. Gobernador I, supra.
Para determinar si un caso se ha convertido en acadé-mico, debe evaluarse la relación existente entre los eventos pasados que dieron lugar al pleito y la adversidad presente. Si el paso del tiempo ha redundado en la ausen-cia de una controversia viva y presente, los tribunales —al amparo de la doctrina de academicidad— deben abste-nerse de considerar el caso en sus méritos. San Gerónimo Caribe Project v. E.L.A. I, supra; P.P.D. v. Gobernador I, supra, pág. 676; Asoc. de Periodistas v. González, supra, págs. 717 — 719. Véase, además, San Gerónimo Caribe Project v. E.L.A. I, supra, opinión disidente emitida por la Juez Asociada Señora Rodríguez Rodríguez. Una expresión judicial en contrario vulneraría la prohibición de emitir opinio-nes consultivas.
En el caso de autos es evidente que la aprobación de las Resoluciones Conjuntas 1884 y 1885 constituye un cambio fáctico que en su momento tornó la controversia en académica. Nótese que el Gobernador firmó las menciona-das Resoluciones el 15 de febrero de 2007, por lo que desde *260 ese instante cesó el motivo de los requerimientos hechos al ingeniero Riera, a saber, el proceso de aprobación de las medidas legislativas. Aprobadas ambas Resoluciones, cual-quier remedio a dictarse por un tribunal no podría afectar la relación entre las partes litigantes. Más aún, tratándose de medidas legislativas cuya duración es limitada, perdie-ron su fuerza y efecto transitorio. C.R.I.M. v. Méndez Torres, 174 D.P.R. 216 (2008). Siendo ello así, el caso dejó de ser justiciable y, por lo tanto, quedó fuera del ámbito de la revisión judicial.
La consecuencia práctica de lo anterior es que, tras la aprobación de las referidas medidas, los foros recurridos carecían de facultad para considerar el pleito. Específica-mente, según la doctrina de academicidad, el foro de ins-tancia no debió considerar la moción de reconsideración presentada por la Cámara de Representantes y, más evi-dente aún, el Tribunal de Apelaciones debió desestimar el recurso de revisión traído ante sí. Por no haber un asunto justiciable ante dicho foro apelativo en esa etapa procesal, la única determinación que puede prevalecer es aquella hecha por el tribunal de instancia el 19 de enero de 2007, mediante la cual decretó la improcedencia del requeri-miento legislativo en cuestión al amparo de la aplicabili-dad prima facie del privilegio abogado-cliente.
En vista de ello, concurrimos con la determinación del Tribunal de revocar la sentencia del foro apelativo, ya que dicho tribunal debió desestimar el caso por haberse tornado académico.(1)
*261 Opinión de conformidad emitida por la Juez Asociada Se-ñora Rodríguez Rodríguez, a la que se une la Jueza Aso-ciada Señora Fiol Matta.
Se plantea en el presente recurso una controversia so-bre la extensión del poder investigativo de la Asamblea Legislativa frente a la Rama Ejecutiva. Debemos desplegar los límites de los poderes inquisitivos de nuestra Rama Le-gislativa en el contexto de un reclamo de producción de documentos hecho por una Comisión de la Asamblea Legis-lativa a un oficial de la Rama Ejecutiva.
I
Los hechos del presente caso se remontan al mes de diciembre de 2006. El 27 de diciembre de 2006, el Gober-nador del Estado Libre Asociado de Puerto Rico ejerció su facultad constitucional de vetar ciertas partidas asignadas en las Resoluciones Conjuntas de la Cámara 1861 y 1862. Dichas resoluciones, aprobadas el 14 de noviembre de 2006, asignaban a la Autoridad para el Financiamiento de la Infraestructura de Puerto Rico (AFI) unos fondos prove-nientes de la Resolución Conjunta Núm. 156 de 9 de julio de 2006. Ello para realizar obras y mejoras en ciertos mu-nicipios y dependencias del Estado Libre Asociado.
Luego de dicho veto de partidas, la Comisión de Presu-puesto y Asignaciones de la Cámara de Representantes (Comisión) emitió una citación al ingeniero Guillermo Riera, director ejecutivo de AFI, para que compareciera a una vista pública en tomo a la aprobación de dos Resolu-ciones Conjuntas de la Cámara, las Resoluciones 1884 y 1885. La citación, con fecha de 11 de enero de 2007, aper-cibió al ingeniero Riera que la Comisión tenía la facultad de citarle y que se podría solicitar una orden de desacato *262 ante el Tribunal de Primera Instancia para asegurar su comparecencia. Se le requirió, además, que presentara un memorial explicativo con sus comentarios sobre las resolu-ciones que la Comisión consideraría.
En esencia, las Resoluciones Conjuntas 1884 y 1885 pretendían reasignar a AFI las partidas que el Gobernador había vetado en las Resoluciones 1861 y 1862. Así, las re-soluciones asignaban fondos a AFI provenientes de la Re-solución Conjunta Núm. 156 de 9 de julio de 2006 para realizar obras y mejoras en diferentes municipios y depen-dencias del Estado Libre Asociado de Puerto Rico.
El ingeniero Riera se negó a asistir a la vista pública para la cual se le citó. En respuesta a ello, el representante Hon. Ángel Pérez Otero, presidente de la Comisión de Pre-supuesto y Asignaciones, acudió al Tribunal de Primera Instancia y solicitó una orden y mandamiento de citación bajo apercibimiento de desacato contra el ingeniero Riera. Mediante esta orden judicial de 16 de enero de 2007, el Director Ejecutivo de AFI fue citado para una nueva vista que se celebraría el 19 de enero de 2007.
Así las cosas, el 16 de enero de 2007 el representante Pérez Otero cursó una nueva comunicación al ingeniero Riera. En ella, hizo referencia al veto de partidas que el Gobernador impartió a las Resoluciones 1861 y 1862. In-dicó que luego del referido veto, el Gobernador expresó que reasignaría los fondos y que lo haría bajo el palio de una “opinión legal que estable [zea] que la Junta de Directores de la Autoridad para el Financiamiento de la Infraestruc-tura puede determinar el uso de las referidas asignaciones”. Apéndice de la Petición de certiorari, pág. 42. En virtud de ello, el representante Pérez Otero invocó sus responsabilidades de análisis fiscal para solicitar copia de la referida opinión legal.
Mediante una misiva de 17 de enero de 2007, AFI se negó a entregar la referida opinión legal. Indicó que ésta constituía material protegido bajo el privilegio abogado- *263 cliente, pues analizaba las posibilidades de prevalecer en mi pleito iniciado por la Asamblea Legislativa en el caso que AFI reasignara ciertas cuantías, sobrante de una emi-sión de bonos bajo la Resolución Conjunta Núm. 156 de 9 de julio de 2006. Además de ello, el ingeniero Riera pre-sentó una petición de intervención en el procedimiento de citación bajo apercibimiento de desacato incoado ante el Tribunal de Primera Instancia.
Luego de examinar la petición del ingeniero Riera, el Tribunal de Primera Instancia declaró “con lugar” la soli-citud de intervención y resolvió que la opinión legal solici-tada por la Cámara de Representantes no estaba sujeta a la investigación de la Cámara que originalmente motivó la citación del ingeniero Riera a la vista del 19 de enero de 2007. Indicó que la opinión legal estaba cobijada por el privilegio que cobija las comunicaciones entre el abogado y su cliente. Regla 25 de Evidencia, 32 L.P.R.A. Ap. IV.
En reconsideración, y luego de celebrar una vista, el Tribunal de Primera Instancia reafirmó su determinación ini-cial y declaró “no ha lugar” la moción de reconsideración presentada por la Cámara de Representantes. Determinó que la Cámara no demostró un verdadero interés legisla-tivo en obtener la opinión legal. Además, resolvió que la opinión legal está cobijada por el privilegio abogado-cliente, por lo que su divulgación lesionaría el derecho de AFI de consultar con sus abogados sobre sus facultades legales y sobre las posibilidades de prevalecer en un pleito iniciado por la Cámara de Representantes.
Ante la denegatoria de la moción de reconsideración, la Cámara de Representantes acudió al Tribunal de Apelaciones. Dicho tribunal resolvió que la determinación en torno a si la opinión legal solicitada por la Cámara está cobijada por el privilegio abogado-cliente, requería exami-nar el documento con miras a determinar si el mismo cum-ple con los criterios jurisprudenciales que toda comunica-ción debe contener para estar protegida por dicho *264 privilegio. Además, determinó que la presente controversia, que involucra a dos poderes constitucionales, exigía realizar un escrutinio estricto de los intereses en juego y que la ausencia de una resolución que recoja el interés y los propósitos de la Legislatura, le impedían ejer-cer su función revisora. Así, el Tribunal de Apelaciones de-volvió el caso al foro primario y ordenó a AFI que entregara la opinión en un sobre sellado.
En su capacidad de Director Ejecutivo de AFI, el inge-niero Riera acudió ante este Tribunal. Aduce que la opinión legal en controversia cumple con los elementos de una co-municación privilegiada, por lo que entiende que erró el foro apelativo intermedio al devolver el caso al tribunal de instancia para examinarla.
El 30 de mayo de 2008 concedimos un término a la parte recurrida para expresarse. Contando en el beneficio de los escritos de ambas partes, este Tribunal expide el auto y revoca el dictamen del Tribunal de Apelaciones.
II
Como asunto de umbral, debemos delimitar el carácter de la presente controversia. Nos enfrentamos a una discre-pancia en torno al ámbito de la facultad de la Asamblea Legislativa de requerir información a un funcionario de la Rama Ejecutiva. El Estado Libre Asociado de Puerto Rico, por conducto de AFI —corporación pública e instrumenta-lidad del Estado Libre Asociado de Puerto Rico creada por la Ley Núm. 44 de 21 de junio de 1988, según enmendada, 3 L.P.R.A. see. 1901 et seq.— impugna el requerimiento de la Comisión de Presupuesto y Asignaciones de la Cámara de Representantes para entregar una opinión legal redac-tada por ciertos asesores legales de AFI. Dicho documento contiene impresiones y recomendaciones legales sobre la extensión de las facultades de AFI de resignar fondos que *265 han sido vetados por el Gobernador mediante el veto de partidas. Además, recoge recomendaciones legales en torno a las probabilidades de prevalecer en un litigio futuro so-bre la asignación de fondos vetados por el Gobernador.
En el transcurso del presente caso, las partes han cen-trado su argumentación en la aplicación del privilegio abo-gado-cliente a los hechos del presente caso.(1) Empero, la correcta adjudicación del presente caso requiere examinar si la Comisión ejerció válidamente sus poderes de investi-gación al requerir la entrega de la opinión legal en controversia.
Comenzamos analizando el ámbito de nuestra revisión judicial en una controversia como la presente, que entraña consideraciones de la separación de poderes en nuestro sis-tema constitucional de pesos y contrapesos.
III
Al enfrentamos a controversias que ponen de relieve la interacción entre los ramas constitucionales de nuestro Go-bierno —lo que exige gran precisión en el análisis de los poderes y deberes tanto de la Rama Ejecutiva como de la Legislativa— hemos aclarado que como intérpretes máxi-mos de la Constitución y de las leyes del Estado Libre Aso-ciado, estamos llamados a delimitar los contornos de las *266 cláusulas constitucionales en juego. Recordemos que no nos es dable rehuir de nuestra responsabilidad como cus-todios de la Constitución. Romero Barceló v. Hernández Agosto, 115 D.P.R. 368, 387 (1984). Véase, además, Acevedo Vilá v. Meléndez, 164 D.P.R. 875 (2005). Así, hemos indi-cado que el ámbito de nuestra revisión judicial en una ma-teria como la presente exige la mayor circunspección de este Tribunal, respetando siempre el delicado equilibrio constitucional que establece nuestra estructura tripartita de gobierno. Véanse: Santa Aponte v. Srio. del Senado, 105 D.P.R. 750, 759-760 (1977); Silva v. Hernández Agosto, 118 D.P.R. 45 (1986); Peña Clos v. Cartagena Ortiz, 114 D.P.R. 576, 587 (1983). Véase, además, R. Berger, Congressional Subpoenas to Executive Officials, 75 Col. L. Rev. 865, 869-870 (1975).
Como corolario de lo anterior, hemos establecido que al encarar impugnaciones al poder investigativo de la Asam-blea Legislativa, es menester determinar si el ejercicio de dicho poder ha sido arbitrario; si se persigue un interés legislativo legítimo, y si se lesionan derechos individuales. Peña Clos v. Cartagena Ortiz, supra, págs. 591-592. Este estándar recoge la deferencia que las cortes le deben con-ferir a la Legislatura en el ejercicio de sus poderes legisla-tivos legítimos, pero a la vez, impone un contrapeso discernible sobre el ejercicio de ese poder, a saber: que no ser arbitrario, que persiga un interés legislativo legítimo y que no lesione derechos constitucionales de los individuos. Con esto, toda investigación legislativa debe perseguir un pro-pósito legislativo que, a su vez, tiene que estar claramente definido y la información o documentación solicitada debe ser pertinente a ese propósito legislativo. Peña Clos v. Car-tagena Ortiz, supra, págs. 584-585. Véanse, además: Banco Popular, Liquidador v. Corte, 63 D.P.R. 66, 79-80 (1944); Watkins v. United States, 354 U.S. 178, 201 (1957).
Aclarados los contornos de nuestra intervención en el presente caso, procede examinar el poder investigativo de la Asamblea Legislativa.
*267 IV
En nuestro ordenamiento constitucional de separación de poderes, la Rama Legislativa goza del poder de investi-gación, que es inherente a la propia existencia del poder legislativo y al quehacer de dicha Rama. Peña Clos v. Car-tagena Ortiz, supra, pág. 589. Véase, además, Pres, del Se-nado, 148 D.RR. 737, 761 (1999). En diversas ocasiones hemos reiterado que la Rama Legislativa goza de amplias facultades en el ejercicio de su poder investigativo. Pres. del Senado, supra, pág. 762; Peña Clos, supra.
Mediante su poder de investigación, la Asamblea Legis-lativa cumple varias encomiendas inherentes a sus pode-res y deberes constitucionales. En el ejercicio de la enco-mienda misma de legislar, las cámaras legislativas realizan investigaciones cuyos fines son precisamente le-gislar o determinar si es deseable aprobar legislación. Véase Watkins v. United States, supra, pág. 187. Por otro lado, las investigaciones legislativas sirven de mecanismo para fiscalizar al Gobierno y a la Rama Ejecutiva. Pueblo v. Pérez Casillas, 117 D.P.R. 380, 395 (1986); Romero Barceló v. Hernández Agosto, supra, pág. 375. Sin embargo, hemos puntualizado que el ejercicio de este poder no es absoluto. Por ello, la determinación sobre la legalidad de la actua-ción legislativa en el contexto de un requerimiento de in-formación está sujeta a la revisión judicial. Silva, v. Hernández Agosto, supra, pág. 54; Peña Clos v. Cartagena Ortiz, supra, pág. 591.
En el contexto de una investigación dirigida a un indi-viduo, el Tribunal Supremo de Estados Unidos determinó en Watkins v. United States, supra, que el Congreso deberá establecer con claridad cuál es el asunto bajo investigación. En modo análogo, en el marco de una investigación legis-lativa sobre las actuaciones del Departamento de Justicia, el Tribunal Supremo federal reconoció que un testigo ante el Congreso se puede negar a responder preguntas que re- *268 basan el poder investigativo del cuerpo legislativo o que no guarden pertinencia con el asunto bajo estudio. McGrain v. Daugherty, 273 U.S. 135, 176 (1927) (“a witness rightfully may refuse to answer where the bounds of the power are exceeded or the questions are not pertinent to the matter under inquiry”).
Esta trayectoria jurisprudencial del Tribunal Supremo federal revela que el ámbito del poder investigativo de una comisión legislativa está sujeto a que la comisión posea autoridad delegada por el Congreso. Id.; Watkins v. United States, supra; United States v. Rumely, 345 U.S. 41 (1953); Gojak v. United States, 384 U.S. 702, 708 (1966). Además, la existencia de un fin o motivo legislativo legítimo está íntimamente relacionada con la jurisdicción que el cuerpo legislativo tenga sobre la materia bajo investigación. 1 Rotunda and Nowak, Treatise on Constitutional Law: Substance and Procedure 4th Sec. 8.4, págs. 1009 — 1010 (2007). Así, la resolución aprobada para la investigación o el re-querimiento particular es el instrumento que legitima la inquisición legislativa. United States v. Rumely, supra.
A la luz de lo anterior, la amplitud del poder legislativo de investigación no legitima sancionar actuaciones de la Rama Legislativa que rebasan el ámbito de sus facultades de investigación. Por ello, hemos indicado que es la función de los tribunales delimitar el alcance de una investigación legislativa para evitar el ejercicio arbitrario de este poder. En este sentido, las resoluciones que dan vida a una inves-tigación legislativa deben ser específicas, de forma tal que los tribunales no se vean obligados a realizar ejercicios de racionalización restrospectiva. Véase Watkins v. United States, supra, pág. 204.
Por otro lado, la transparencia en el manejo de los asun-tos de gobierno goza de primordial importancia en nuestra jurisdicción. Sin duda, la facultad legislativa de investiga-ción asegura dicha transparencia y como resultado de ello se fortalece la democracia. Empero, como últimos intérpre- *269 tes de las leyes y de nuestra Constitución, debemos asegu-rar que la Rama Legislativa actúe dentro de sus prerroga-tivas constitucionales y que no se inmiscuya en los poderes de otras ramas de nuestro Gobierno. Véanse: Santa Aponte v. Srio. del Senado, supra, pág. 759; Barenblatt v. United States, 360 U.S. 109, 112 (1959).
V
En el pasado hemos atendido reclamos ciudadanos de información en contraposición a reclamos ejecutivos de confidencialidad. Colón Cabrera v. Caribbean Petroleum, 170 D.P.R. 582 (2007); López Vives v. Policía de P.R., 118 D.P.R. 219 (1987) (extendió el derecho a la información en el contexto de un proceso administrativo); Angueira v. J.L.B.P., 150 D.P.R. 10 (2000); Santiago v. Bobb y El Mundo, Inc., 117 D.P.R. 153 (1986); Soto v. Srio. de Justi-cia, 112 D.P.R. 477 (1982). En estos casos evaluamos recla-mos de confidencialidad del Estado basados en leyes espe-ciales que disponen la confidencialidad de cierta información —Colón Cabrera v. Caribbean Petroleum, supra; Ortiz v. Dir. Adm. de los Tribunales, 152 D.P.R. 161 (2000); Angueira v. J.L.B.P., supra; Soto v. Srio. de Justi-cia, supra— y reclamos de confidencialidad al amparo de los privilegios de información oficial y de la identidad de un informante según disponen las Reglas 31 y 32 de Evi-dencia, 32 L.P.R.A. Ap. IV, respectivamente. Santiago v. Bobb y El Mundo, Inc., supra; Noriega v. Gobernador, 130 D.P.R. 919 (1992); López Vives v. Policía de P.R., supra.
En estas ocasiones validamos la primacía del derecho a la información de los ciudadanos frente a los reclamos de confidencialidad argumentados por el Estado para negar el acceso a la información pública. Santiago v. Bobb y El Mundo, Inc., supra; Colón Cabrera v. Caribbean Petroleum, supra; Peña Clos v. Cartagena Ortiz, supra. Ello en vista de que el derecho ciudadano de acceso a la informa- *270 ción en nuestra jurisdicción se deriva del derecho a la li-bertad de expresión, por lo que tiene una insoslayable dimensión constitucional. Soto v. Srio. de Justicia, 112 D.P.R. 477 (1982); Colón Cabrera v. Caribbean Petroleum, supra.
A diferencia de dichos precedentes, el presente caso en-cierra un requerimiento de la Rama Legislativa frente a la Rama Ejecutiva. En Peña Clos v. Cartagena Ortiz, supra, encaramos una controversia análoga a la presente, pues allí se trató el asunto relativo a la extensión del poder in-vestigativo de la Legislatura frente a una agencia ejecutiva. En dicha ocasión prevaleció el requerimiento de documentos de la Asamblea Legislativa frente al reclamo de confidencialidad del Estado. Al examinar un reclamo ejecutivo de confidencialidad, reconocimos que la peculia-ridad de una controversia como ésta requería tomar en cuenta que el poder legislativo de investigación no es abso-luto, como tampoco es ilimitada la facultad de la Rama Ejecutiva de retener información. Puntualizamos que una controversia como ésta requiere que se confiera el debido peso al reclamo ejecutivo, siendo conscientes de que un re-clamo de esta naturaleza no sólo se contrapone a las facul-tades de la Asamblea Legislativa, sino también que en él subyace el interés de la ciudadanía en mantenerse infor-mada de los asuntos públicos. Id., pág. 594.
Con este trasfondo en mente, procedemos a evaluar las particularidades del caso que nos ocupa.
VI
En el presente caso, la Rama Ejecutiva cuestiona el po-der de la Asamblea Legislativa de requerir la entrega de una opinión legal que contiene deliberaciones de política pública y estrategias legales con miras a un posible litigio contra AFI. Así, la peticionaria esgrime un reclamo de con- *271 fidencialidad que se fundamenta en el interés de mantener un clima de apertura en las discusiones internas de una agencia, al igual que con sus asesores legales, previo a to-mar una decisión de política pública o una decisión sobre el curso a seguir en un litigio. Es decir, AFI levanta un re-clamo de confidencialidad de una información generada por una agencia en un proceso deliberativo de toma de decisiones. (2)
Al amparo de sus poderes sobre los asuntos fiscales del país, la Comisión obtuvo una orden judicial dirigida al Director Ejecutivo de AFI para que éste compareciera a una vista pública en la que se examinaría la aprobación de dos Resoluciones Conjuntas que asignaban fondos para reali-zar obras y mejoras en diferentes municipios y dependen-cias del Estado Libre Asociado de Puerto Rico. Luego de ello y sin aprobar una resolución que legitime dicha inves-tigación, la Comisión requirió la producción de la opinión legal que antes hemos detallado. Indudablemente, la Co-misión tiene autoridad delegada de la Cámara de Repre-sentantes para evaluar el Presupuesto General y para es-tudiar las propuestas del Gobernador en materia presupuestaria. R. de la C. Núm. 2 de 2 de enero de 2005, *272 15ta Asamblea Legislativa, Ira Sesión Ordinaria, 10 de enero de 2005. También tiene la facultad delegada de exa-minar “toda medida de asignación de fondos y ... las asig-naciones incluidas en cualquier medida legislativa”. Id. Como sabemos, la Cámara tiene el poder estatutario de citar testigos y requerir documentos. Art. 31 del Código Político, 2 L.P.R.A. sec. 151.(3) Ello no obstante, en este caso en particular somos del criterio que no procede la so-licitud hecha por la Comisión.
Ante la ausencia de una resolución que autorice una investigación en el presente caso, entendemos que la Co-misión no estableció la pertinencia de la opinión legal ni su relación con el estudio de las Resoluciones Conjuntas 1884 y 1885 que eran objeto de análisis por la Comisión. Recor-demos que el requerimiento hecho al Director Ejecutivo de AFI mediante una carta meramente adujo que la Comisión había advenido en conocimiento que, al amparo de una opi-nión legal rendida a AFI, el Gobernador había anunciado que reasignaría las partidas incluidas en las Resoluciones Conjuntas 1861 y 1862, las cuales el Gobernador había ve-tado en diciembre de 2006. Así, la Comisión exigió la pro-ducción de la opinión, sin esbozar otro argumento que sus “responsabilidades de análisis fiscal”. Apéndice de la Peti-ción de certiorari, pág. 42. En otras palabras, ante la au-sencia de una resolución que autorizara una investigación, la justificación esgrimida para solicitar el documento se revela insuficiente. Obsérvese, que la información solici-tada guarda poca o remota relación con el objeto de la vista *273 pública de la Comisión, a saber, el estudio de las Resolu-ciones Conjuntas 1884 y 1885.
Somos del criterio que el procedimiento seguido en este caso apunta a que la Cámara de Representantes no deli-mitó su encomienda investigativa. Tampoco estableció la relación y pertinencia entre una investigación legislativa legítima y el requerimiento hecho a la Rama Ejecutiva. Es decir, las circunstancias particulares de este caso nos lle-van a concluir que el reclamo de la Asamblea Legislativa es arbitrario y carente de fundamentos específicos y claros que encuentren su génesis en un interés legislativo legítimo.
Además, el requerimiento de información no guarda re-lación alguna con el propósito para el cual el Director Eje-cutivo de AFI fue citado. Como sabemos, la Comisión lo citó para discutir las Resoluciones Conjuntas 1884 y 1885 que pretendían asignar ciertas partidas para mejoras en las dependencias del Estado y en ciertos municipios. Luego de ello, la Comisión requirió la producción de la opinión legal que, como indicamos, versa sobre los poderes de AFI de reasignar fondos. Por lo tanto, las vistas públicas realiza-das por la Cámara en tomo a las Resoluciones 1884 y 1885 tampoco legitiman el requerimiento de la Cámara de Re-presentantes en el presente caso.(4)
El poder de investigación de la Rama legislativa no es irrestricto ni absoluto. So color de la autoridad de fiscalizar los expendios y la utilización de fondos públicos, la Cámara de Representantes no puede emitir requerimientos que ex-cedan los parámetros de su autoridad investigativa.(5)
*274 Por todo lo anterior, estoy conforme con expedir el auto en el presente caso y revocar la sentencia del Tribunal de Apelaciones que ordenó una inspección en cámara de la opinión legal en controversia para determinar si ésta cum-plía con los criterios jurisprudenciales del privilegio abogado-cliente.(6) Soy del criterio que procede reinstalar la determinación del Tribunal de Primera Instancia en la medida en que determinó que no procedía el requerimiento de la Cámara de Representantes.

0 Además, tomamos conocimiento judicial de que debido al cambio de adminis-tración gubernamental luego de las recientes elecciones generales, el ingeniero Riera ya no ocupa el cargo de Director Ejecutivo de la AFI. De igual forma, los recientes eventos electorales trajeron consigo un cambio en la composición de la Asamblea Legislativa. Lo anterior constituye otra circunstancia fáctica que abona a nuestra conclusión sobre la aplicación de la doctrina de academicidad al caso de autos.

 Por conducto de su Director Ejecutivo, la Autoridad para el Financiamiento de la Infraestructura de Puerto Rico (AFI) recurre ante este Tribunal y arguye que la opinión legal cumple con los requisitos jurisprudenciales de una comunicación cobi-jada por el privilegio abogado-cliente. Aduce que el privilegio aplica en el Gobierno y que, además, se puede esgrimir frente a la Asamblea Legislativa. Por su parte, AFI arguye que el privilegio abogado-cliente no aplica en los procedimientos ante el Asamblea Legislativa y que, como cuestión de uso y costumbre, dicho organismo ejerce su discreción al determinar si reconoce el privilegio. Por su parte, el Tribunal de Apelaciones entendió que la opinión legal podría estar cobijada por el privilegio abogado-cliente. En vista de que carecía de los elementos suficientes para determi-nar si en efecto la opinión legal contenía materia privilegiada por ser producto de comunicaciones entre un abogado y su cliente, el foro apelativo intermedio determinó que el tribunal de instancia debía examinar la opinión en cámara.

 En la jurisdicción federal se ha reconocido el denominado “deliberative-process privilege” para proteger la información gubernamental. NLRB v. Sears, Roebuck & Co., 421 U.S. 132 (1975). En el contexto de las agencias federales, dicho privilegio encuentra reconocimiento estatutario en el Freedom of Information Act (FOIA), 5 U.S.C.A. sec. 552. Este estatuto reconoce el derecho ciudadano a la infor-mación, pero dispone, a modo de excepción, que el Gobierno podrá negarse a revelar documentos^ memorandos internos generados en el proceso ejecutivo de toma de decisiones. Id.; Kaiser Aluminum & Chemical Corp. v. United States, 157 F. Supp. 939 (Ct. Cl. 1958). Véanse, además: E.L. Chiesa, Tratado de Derecho Probatorio, República Dominicana, Ed. Corripio, [s. f.], T. I, Sec. 4.12, págs. 292-293; U.S. v. Farley, 11 F.3d 1385 (7mo Cir. 1993); R.L. Weaver y J.T. R. Jones, The Deliberative Process Privilege, 54 (Núm. 2) Mo. L. Rev. 279 (1989); Nota, The Reasonable Government Official Test: A Proposal for the Treatment of Factual Information Under the Federal Deliberative Process Privilege, 49 (Núm. 2) Duke L.J. 561 (1999). En NLRB v. Sears, Roebuck & Co., supra, el Tribunal Supremo federal estableció que el Con-greso tuvo en mente el privilegio ejecutivo al reconocer el privilegio de proceso deli-berativo en el FOIA. El Tribunal también aclaró que el privilegio sólo se extiende a las comunicaciones previas a la toma oficial de la decisión. íd. Además, el privilegio puede ceder si la necesidad de que se entregue la información tiene mayor peso que los intereses de confidencialidad. U.S. v. Farley, supra.

 Este artículo confiere al Presidente de la Cámara, al Presidente del Senado y al presidente de la comisión de la que se trate, la facultad de citar a un testigo para que comparezca a una vista o para que entregue documentos u objetos. 2 L.P.R.A. see. 151. Además de dicha autoridad estatutaria para citar testigos, el Código Polí-tico establece un procedimiento judicial para requerir la comparecencia del testigo o la entrega de los documentos. Art. 34-A del Código Político, 2 L.P.R.A sec. 154a. Este procedimiento vislumbra, además, la imposición de desacato civil si se incumple la orden judicial. íd. Véase Pres. del Senado, 148 D.P.R. 737, 762 (1999). Además de ello, el Art. 33 del Código Político estatuye que se podrá iniciar un procedimiento criminal contra el testigo que no comparezca a testificar o que no produzca los docu-mentos solicitados. 2 L.P.R.A. see. 154.

 Adviértase que durante el transcurso del presente litigio, el Gobernador vetó ciertas partidas en las Resoluciones 1884 y 1885 de la Cámara, las cuales eran esencialmente iguales a las que el Primer Mandatario había vetado en las Resolu-ciones 1861 y 1862.

 En este caso, según se puede deducir de los argumentos de las partes y del expediente del presente recurso, cabría argüir también que la opinión legal en con-troversia contiene información oficial según definida en la Regla 31 de Evidencia, 32 *274 L.P.R.A. Ap. IV. Esta regla define información oficial como la “adquirida en confiden-cia por un funcionario o empleado público en el desempeño de su deber y que no ha sido oficialmente revelada ni está accesible al público hasta el momento en que se invoca el privilegio”. íd. En su inciso (b), esta regla establece que un testigo tendrá el privilegio de no divulgar información oficial. Además, no se revelará la información oficial si el tribunal determina que divulgarla sería perjudicial a los intereses del Gobierno. Id.
No hay duda de que la opinión legal fue obtenida por el Director Ejecutivo de AFI en confidencia. Como surge del expediente de autos, la opinión no ha sido divul-gada previo a la invocación del privilegio por AFI y fue producto de una consulta legal hecha por AFI a sus representantes legales. Precisamente, ante el requeri-miento de la Cámara de Representantes el peticionario, como Director Ejecutivo de AFI, se opuso a la entrega de ésta por considerarla privilegiada.
El requerimiento hecho estaría dirigido también a requerir información oficial producto de un proceso de consulta interna en una agencia ejecutiva. Ante el hecho que la Comisión emitió un requerimiento arbitrario que irrumpió en las prerrogati-vas de la Rama Ejecutiva, el mismo sería improcedente. Como ya se señaló, en este caso la Rama Legislativa no delimitó adecuadamente el ámbito de su facultad y por ello emitió un requerimiento arbitrario que irrumpe en los procesos internos de la Rama Ejecutiva.

 Debido a que lo anterior dispone de la presente controversia, no es necesario entrar a estudiar la aplicación del privilegio abogado-cliente a los hechos del pre-sente caso.