UNITED STATES of America, Plaintiff–Appellant,

v.

William F. FARLEY, Defendant–Appellee.

No. 93-1759.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 21, 1993.

Decided Dec. 15, 1993.

---

**1387**

Fred Foreman, U.S. Atty., Crim. Div., Catherine R. Fuller, F.T.C., Chicago, IL, James W. Lowe, Dept. of Justice Antitrust Div., Appellate Section, (argued), John W. Clark, U.S. Dept. of Justice, Reid B. Horwitz, Robert N. Cook, Ernest A. Nagata, Morris A. Bloom, F.T.C., Robert B. Nicholson, Dept. of Justice, Washington, DC, for U.S.

Lee A. Watson, Donald E. Egan (argued), Jaye Quadrozzi, Katten, Muchin & Zavis, Chicago, IL, for William F. Farley.

Before POSNER, Chief Judge, and CUMMINGS and CUDAHY, Circuit Judges.

CUMMINGS, Circuit Judge.

In January 1992 the United States filed a complaint alleging that William F. Farley violated Section 7A of the Clayton Act, 15 U.S.C. § 18a, commonly called the Hart–Scott–Rodino Antitrust Improvements Act ("HSR Act"). The complaint alleges that on March 24, 1988, Farley failed to notify the Department of Justice and the Federal Trade Commission ("FTC") when his purchases of the stock of West Point–Pepperell, Inc. ("West Point") exceeded $15 million, the point at which the reporting requirements of the HSR Act contained in 15 U.S.C. § 18a(a)(3)(B) are triggered. The violation allegedly extended for 91 days until June 22, 1988. In accordance with 15 U.S.C. § 18a(g), the government sought a civil penalty of $910,000, the maximum daily civil penalty for violating the HSR Act reporting requirements. The district court dismissed the government's complaint with prejudice when, in response to a district court order, the government declined to produce nine internal FTC documents it alleged were protected by the work product and deliberative process privileges. The documents in question have recently been submitted to us for *in camera* review. We reverse.

## STATUTE

The HSR Act prohibits anyone with substantial assets or sales from acquiring voting securities from another firm with substantial assets or sales if the acquisition would result in the purchaser holding at least $15 million of that firm's voting securities, unless (a) the purchaser first notifies the Department of Justice and the FTC and (b) complies with the statutory waiting period of 15 days for a cash tender offer, 30 days for other transactions, and 10 days in the case of bankruptcy filings. 15 U.S.C. § 18a(a), (b). There is an exemption for acquisitions of voting securities solely for the purpose of investment if they do not exceed 10% of the outstanding voting securities of the issuer. 15 U.S.C. § 18a(c)(9). The notification requirements are intended to give antitrust enforcement agencies an opportunity to identify transactions that might violate Section 7A of the Clayton Act (15 U.S.C. § 18a).

## FACTS

In 1988 defendant Farley was the majority stockholder and chief executive officer of Farley, Inc.,[1] a holding company then engaged in the apparel, footwear and precision metals businesses. The principal executive office of Farley, Inc., a Delaware corporation, is located in Chicago. In February of 1988 Farley, Inc. borrowed $500 million through Drexel Burnham Lambert, Incorporated. Of this sum, $200 million was to pay off existing debt and the balance was to be invested in, *inter alia*, equity securities and possible acquisition candidates.

On March 9, 1988, Farley began purchasing West Point stock, and the value of that stock passed $15 million on March 24, 1988. Farley made no HSR filing at that time, but continued to purchase West Point stock. On April 11, he held almost 5% of the West Point stock, whose value was then about $50 million. Farley thus exceeded the HSR re-

---

1. Farley and Farley, Inc. are used interchangeably herein because defendant was the "ultimate parent entity" of Farley, Inc., as defined in 16 C.F.R. § 801.1(3), and was the person responsible for the notifications required by the HSR Act. 16 C.F.R. § 803.2(a).

porting threshold by approximately $35 million.

On May 23, 1988, Farley filed an HSR Act pre-merger notification report seeking to acquire 25% of West Point stock. The HSR waiting period expired on June 23, 1988, without the Federal Trade Commission or the Department of Justice seeking additional information. On October 24, 1988, Farley made a second HSR Act filing seeking approval to purchase up to 100% of West Point voting securities. The waiting period under the Act expired on November 7, again without any action by federal enforcement agencies. On April 5, 1989, Farley completed his acquisition of West Point. This suit concerns only his March 24, 1988, failure to report the purchase of $15 million of West Point stock in contravention of 15 U.S.C. § 18a(a)(3)(B).

### COMPLAINT BY JUSTICE DEPARTMENT

In early 1989 the FTC commenced investigating whether Farley violated the HSR Act's reporting and waiting period requirements when he passed the $15 million West Point stock threshold on March 24, 1988. Thereafter the FTC recommended that the Department of Justice bring this action against Farley for violating the HSR Act. As a result this suit was filed on February 12, 1992, seeking recovery of a $910,000 statutory penalty under 15 U.S.C. § 18a(g)(1).

Farley's answer claimed, among other defenses,[2] that he was not required to report his March and April 1988 West Point purchases because they fell within the investment-only exemption contained in the HSR Act which exempts "acquisitions, solely for the purpose of investment, of voting securities, if, as a result of such acquisition, the securities acquired or held do not exceed 10 percent of the outstanding voting securities of the issuer." 15 U.S.C. § 18a(c)(9).

After the FTC had recommended to the Justice Department that this suit be brought but before the complaint was filed, Raymond Randall—an FTC attorney who had worked on the investigation—without the permission of the FTC delivered internal FTC documents relating to the Farley investigation to one of Farley's law firms. That firm's ethics counsel returned the original documents to the FTC but retained copies.

· After the complaint was filed, Farley demanded production of 16 years' worth of FTC and Department of Justice files relating to the interpretation and application of the investment-only exemption in the HSR Act (15 U.S.C. § 18a(c)(9)). This request covered over 1,000 documents and attachments. Shortly thereafter Farley requested the documents that FTC attorney Randall had improperly released. The government produced all documents relating to the investment-only exemption and the Farley investigation (over 400 documents) except 39 documents and attachments the FTC alleged were protected by the work product and deliberative process privileges. The 39 documents withheld included most of the documents wrongfully disclosed by Randall.

The district judge referred this and other open discovery matters to Magistrate Judge Lefkow. Farley moved to compel the production of all documents not yet produced relating, among other things, to the investigation of his acquisitions, including any communications with West Point or its counsel.

After reviewing the disputed documents *in camera*, the magistrate judge ordered certain of them be disclosed to Farley. The government filed objections to Magistrate Judge Lefkow's decision as to nine of the documents (identified on the government's privilege log as numbers 119–B, 210–B, 221–B, 221–D, 244–C, 249–B, 286, 287–B–1, 288–A–1),[3] again relying on the work product and deliberative process privileges. The nine

---

**2.** Farley's other defenses are set out *infra* p. 1390. The district judge denied plaintiff's motion to strike some of the six affirmative defenses as insufficiently pled under Fed.R.Civ.P. 8, but postponed a determination of whether the defenses were legally sufficient. Joint App. 52–55 (indicating that defenses might be struck for legal insufficiency "in a motion for summary judg-

ment or some other proceeding later in the case").

**3.** Farley appears to believe that the magistrate judge's order covers more than these nine documents. That dispute need not be resolved since the issues underlying the magistrate judge's order are the same for all documents in dispute.

documents included memoranda of FTC staff members and discussions of the Farley matter, as well as documents containing the FTC staff's views on the investment-only exemption and recommendations for future action. Without inspecting the disputed documents, Judge Duff refused to overturn the magistrate judge's disclosure order because of his expressed confidence in her ruling. Consequently, in accordance with the procedure approved in *United States v. Procter & Gamble Co.*, 356 U.S. 677, 678–681, 78 S.Ct. 983, 984–986, 2 L.Ed.2d 1077, the government suggested dismissal of the case solely in order to obtain appellate review. Thereafter the action was dismissed with prejudice on January 26, 1993, and this appeal subsequently was filed.

## ANALYSIS.

(A) *Deliberative Process and Work Product Privileges*

 The magistrate judge ruled that the documents in question were covered by the deliberative process or work product privilege but that the documents should nonetheless be disclosed. The deliberative process privilege protects communications that are part of the decision-making process of a governmental agency. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–152, 95 S.Ct. 1504, 1516–1517, 44 L.Ed.2d 29. Since frank discussion of legal and policy matters is essential to the decisionmaking process of a governmental agency, communications made prior to and as a part of an agency determination are protected from disclosure. *Id.* at 151, 95 S.Ct. at 1516–17. Communications made subsequent to an agency decision are, however, not similarly protected. *Id.* at 152, 95 S.Ct. at 1517. The deliberative process privilege may be overcome where there is a sufficient showing of a particularized need to outweigh the reasons for confidentiality. Cf. *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 868 (D.C.Cir.1980) (the privilege should be applied "as narrowly as consistent with efficient government operation"); *Black v. Sheraton Corp. of America*, 564 F.2d 531, 545 (D.C.Cir.1977).

 After examining the documents, this Court concludes that the documents were clearly part of the deliberative process leading to the decision to sue. Document No. 244–C is the referral memorandum from the FTC staff to the Department of Justice. Having been rendered prior to the Department's decision to bring an action against Farley, the document is within the Department's deliberative process privilege. Since the document was pre-decisional and deliberative, the fact that the document passed from one agency to another does not terminate its privileged status. *Renegotiation Board v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 188, 95 S.Ct. 1491, 1502, 44 L.Ed.2d 57; *Bureau of Nat'l Affairs, Inc. v. United States Dep't of Justice*, 742 F.2d 1484, 1497 (D.C.Cir.1984). The other disputed documents are staff memoranda to senior agency officials with recommendations, legal interpretations and drafts of litigation documents, documents clearly part of the FTC's deliberations on the Farley matter and therefore exempt from production. *Formaldehyde Institute v. Department of Health & Human Services*, 889 F.2d 1118, 1122–1125 (D.C.Cir. 1989) (collecting cases). The deliberative process extends to these pre-decisional communications—if communications such as these were exposed the candor of government staff would be tempered "with a concern for appearances * *. * to the detriment of the decisionmaking process." *United States v. Nixon*, 418 U.S. 683, 705, 94 S.Ct. 3090, 3106, 41 L.Ed.2d 1039; *Sears, Roebuck*, 421 U.S. at 150–151, 95 S.Ct. at 1516–1517. Moreover, since the documents reflect an agency's preliminary positions about how to exercise discretion on a policy, they are privileged. *Petroleum Information Corp. v. United States Dep't of Interior*, 976 F.2d 1429, 1435 (D.C.Cir.1992).

 Since the documents at issue are within the scope of the deliberative process privilege, the government could only be required to produce them if Farley made a showing that his need for the documents outweighed the government's interest in not disclosing them. *Coastal States Gas Corp.*, 617 F.2d at 868; *Black*, 564 F.2d at 545. Farley, however, has never shown such a particularized need. Farley's only assertion

of need was his claim that they are relevant and generally important to his affirmative defenses. Yet relevance alone is an insufficient reason for breaching the deliberative process privilege. It was essential that the magistrate judge balance Farley's particularized need for the documents against their nature and the effect of disclosure on the government. This balancing was never done. Instead the magistrate judge merely determined that the documents were relevant to Farley's defense and ordered their disclosure. Since the required balancing was not done, the documents should not have been ordered to be produced.

█ The magistrate judge also held the work product privilege epitomized in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, applied to certain documents, but nevertheless ordered disclosure to assist defendant's defense. Documents protected by the work product privilege, however, need only be disclosed upon a showing of substantial need. *Id.* at 511–512, 67 S.Ct. at 393–394. Fed.R.Civ.P. 26(b)(3). It does not appear from the record that such a substantial need was ever shown.

**(B)** *Relevance*

Although this Court believes that the magistrate failed to determine properly whether Farley had shown sufficient need to overcome the two privileges, we need not remand this case for such a determination. Since the documents at issue are not relevant to the controversy before us, Farley cannot, as a matter of law, make a showing of need.

█ The Federal Rules of Civil Procedure contemplate broad discovery, permitting discovery "regarding any matter, *not privileged,* which is relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1) (emphasis supplied). The rules of discovery are, however, not broad enough to require the discovery of the material here at issue. The discovery proposed here is not relevant to the issue presented by the government's complaint, whether Farley was required to report on March 24, 1988, that his holdings in West Point had exceeded the $15 million threshold. To resolve this issue, the court need only compare Farley's acquisi-

tions and filings to the HSR Act's reporting requirements. Nor is the proposed discovery relevant to any of Farley's affirmative defenses. Farley's affirmative defenses are:

(1) that the government's complaint fails to state a claim upon which relief may be granted;

(2) that the complaint is barred by the doctrine of estoppel because Farley relied to his detriment on the FTC's then existing public interpretations of the investment-only exemption;

(3) that Farley's purchases were exempt from HSR Act requirements under the investment-only exemption;

(4) that the FTC regulation defining the exemption, 16 C.F.R. § 802.9, is impermissibly vague;

(5) that enforcement of that regulation would be arbitrary and capricious under the Administrative Procedure Act; and

(6) that Farley had no notice that the investment-only exemption would not apply to his initial acquisitions.

█ The FTC documents are definitely not relevant to Farley's claim that his purchases fell within the investment-only exemption to the HSR Act's reporting requirements. This defense requires only that the district court interpret the statutory exemption and determine whether Farley's purchases were within the scope of that exemption. The suppositions of FTC staff members expressed in internal memoranda as to requirements of the Act are not pertinent to this task. In its attempt to decipher the meaning of a statute a court may rely on various tools, including official agency interpretations. *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 864–866, 104 S.Ct. 2778, 2792, 81 L.Ed.2d 694. Courts may not, however, rely on unpublished opinions of agency staff. *International Paper Co. v. Federal Power Comm'n,* 438 F.2d 1349, 1358–1359 (2d Cir.1971), certiorari denied, 404 U.S. 827, 92 S.Ct. 61, 30 L.Ed.2d 56. ("[V]iews of individual members of the [agency's] staff are not legally germane."). The documents at issue here clearly fall in the latter category and as such are not germane to the court's inquiry.

Similarly, the documents at issue have no bearing on Farley's claim that the government is estopped from pursuing the interpretation of the investment-only exemption urged by the FTC because Farley supposedly relied to his detriment on the agency's previously announced interpretations of the HSR Act. The merit of this defense turns not on the substance of intra-agency communications but on the content of publicly articulated policy. The views of agency employees contained in intra-agency documents are not, however, expressions of FTC policy. *Id.* Rather they are part of the exchange of ideas—the give and take—central to the formulation of such policy. Farley's detrimental reliance claim, therefore, is not a basis for admitting the documents in question.

Nor do any of Farley's other defenses provide a basis for discovery. The FTC's internal documents are not relevant to Farley's claim that the FTC regulation defining the investment-only exemption, 16 C.F.R. § 802.9, is impermissibly vague. This is a matter of statutory interpretation and constitutional analysis, a process which does not require the court to review the postulations of agency staff members as to the meaning of the investment-only exemption. The FTC documents are also not relevant to Farley's contention that the government has failed to state a claim on which relief may be granted—this is a question of law on which the FTC documents can shed no light. Nor are the documents relevant to Farley's claim that the FTC's regulations did not provide adequate notice that he was required to report his initial West Point investments. Since the documents in question were for intra-agency use and not general distribution, they reveal nothing about the adequacy of the public notice provided by the regulations. Post-

publication discourse among FTC staff about the meaning of the HSR regulations is irrelevant to the central issue of this defense—determining whether Farley should, after reading the regulations, have understood that his purchases did not fall within the definition of the investment-only exemption set out therein. To resolve this question, the court need look only to the language of the regulation and any official, public interpretations of it. Cf. *International Paper Co.,* 438 F.2d at 1358–1359.

Farley's remaining defense is that the application of 16 C.F.R. § 802.9 to his acquisitions constitutes arbitrary and capricious action in violation of the Administrative Procedures Act ("APA"), 5 U.S.C. § 706.[4] Judicial review under the APA is of official agency action. 5 U.S.C. § 551(13). Comments made in internal FTC documents are not official agency actions and therefore not legally relevant to a court's review under the APA.

## CONCLUSION

This Court's inspection of the documents at issue shows that they were clearly covered by the deliberative process and work product privileges. Ordering their disclosure without a proper assessment of Farley's need for the documents was an error. Moreover, as the documents are as a matter of law not relevant to the present controversy, a showing of sufficient need is not possible. Consequently, the disclosure and dismissal orders were erroneous.

REVERSED AND REMANDED.

---

**4.** We note that it is unclear whether the FTC has taken any action with regard to Farley that is reviewable under the APA. The APA provides for judicial review of "final agency action," 5 U.S.C. § 704, defined to include an agency "rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). The only action taken by the FTC with regard to Farley was its referral of his case to the Department of Justice, and this referral may not be a "final agency action," but merely "a threshold determination that further inquiry is warranted...." *FTC v. Standard Oil of California,* 449

U.S. 232, 241, 101 S.Ct. 488, 493, 66 L.Ed.2d 416. It is also unclear whether the district court presently has jurisdiction over a challenge to an action taken by the FTC since the FTC is not a party to this action. This Court will not resolve these issues here since we believe that regardless of the outcome of those issues Farley does not have a right to discover the documents in question. However, so that further relevancy and discovery problems can be minimized, the district court judge should determine whether this—and any other defenses—should be stricken as legally insufficient.