**UNITED STATES of America,**
**Plaintiff,**

v.

**NAVISTAR INTERNATIONAL CORP.;**
**and Navistar, Inc., Defendants.**

**No. 15 cv 6143**

United States District Court,
N.D. Illinois, Eastern Division.

Signed 02/22/2017

1050

Abigail Andre, U.S. Dept. of Justice/ENRD/EES, Denver, CO, Deanna J. Chang, U.S. Department of Justice c/o Regional Solicitors Office, Doi, Portland, OR, Keith Taketo Tashima, U.S. Dept. of Justice/Environment & Natural Resources Division, Patrick B. Bryan, Sean Kevin Carman, U.S. Department of Justice, Peter C. Krzywicki, Washington, DC, for Plaintiff.

Cary R. Perlman, Arthur F. Foerster, Caitlin E. Dahl, Malorie R. Medellin, Latham & Watkins LLP, Laurence Harvey Levine, Chicago, IL, for Defendants.

## ORDER

Magistrate Judge Susan E. Cox

For the reasons discussed below, Defendants' Motion to Compel [Dkt. 89] is denied. Plaintiff's Motion to Expand the Scope of Defendants' Motion and for Amendment of the Confidentiality Order [Dkt. 96] is denied as moot.

## BACKGROUND

Presently before the Court are Defendants' Motion to Compel [Dkt. 89], and the Plaintiff's Motion to Expand the Scope of Defendants' Motion and for Amendment of the Confidentiality Order [Dkt. 96]. This case arises from a civil action brought

pursuant to the Clean Air Act ("CAA"), 42 U.S.C. §§ 7401–7671, by the Plaintiff United States of America ("Plaintiff" or "EPA"), "by authority of the Attorney General and at the request of the Administrator of the United States Environmental Protection Agency ('EPA')." (Am. Cmplt. at ¶ 1.) Plaintiff alleges that Defendants "sold, offered for sale, introduced or delivered for introduction into commerce" heavy-duty diesel engines ("HDDEs") during the 2010 calendar year that did not comply with the EPA's regulation requiring any new motor vehicle engine to be covered by a certificate of conformity ("COC") issued by the EPA. (*Id.* at ¶¶ 20, 42–44). In order to obtain a COC, "an HDDE manufacturer must submit a COC application to EPA for each HDDE engine family and each HDDE model year that it intends to manufacture for introduction into commerce." (*Id.* at ¶ 22.) Plaintiff alleges that the relevant engines in this suit were "produced" during the 2010 calendar year, but did not satisfy the emissions standards applicable to model year 2010 HDDEs; none of these engines, therefore, were covered by COCs, which is a violation of Section 203(a)(1) of the CAA. (*Id.* at ¶¶ 44–52.) Instead, Defendants sold the HDDEs as 2009 model year HDDEs by relying on 2009 COCs, thereby evading the more stringent emissions standards applicable to model year 2010 engines.

Defendants argue that during the time period relevant to this suit EPA regulations did not define when a new motor vehicle engine was "produced" such that the COC requirement became operative. This is important because when an HDDE is "produced" may affect both its model year and, as a result, the appropriate year for the COC that covers the HDDE. *See*

40 C.F.R. § 85.2304–2305; 40 C.F.R. § 1068. For non-road engines, EPA defined the model year as "the date on which the crankshaft is installed in an engine block." 40 C.F.R. § 1068.30. Defendants do not believe that the regulations provided a road map for determining when a HDDE was "produced," and began using the date of crankshaft installation to determine the model year for its HDDEs. (Dkt. 68 at 7.) Under this theory, the Defendants argue that the HDDEs were from the 2009 model year, and should have been covered by the COCs issued in 2009. Although Plaintiff admits that the regulations do not explicitly provide a definition of when an HDDE is "produced," Plaintiff believes that any fair reading of the EPA regulations clearly demonstrates that the subject HDDEs were produced in 2010, and, therefore needed COCs for the 2010 model year. Defendants do not believe that the regulations are clear, and they contend that they reasonably relied on the non-road regulations to attempt to determine when their HDDEs were "produced" in the absence of a definition in the regulations for on-road engines.

Discovery in this case has been bifurcated; Phase I of the litigation focuses on liability (*i.e.*, whether Defendants violated Section 203(a)(1) of the CAA), and Phase II will focus on penalties (the CAA allows for penalties up to $37,500 for each violation of the CAA). (Dkt. 34.) To date, the parties are still engaged in Phase I of the discovery process. On December 10, 2015, Defendants served their first request for production (First RFPs);[1] some of these requests necessarily sought documents that the EPA had collected from other HDDE manufacturers in the process of their administrative enforcement proceed-

---

1. Plaintiff's motion seeks to have Defendants' motion expanded to include Defendants' Second Request for Production. The Court de- clines to do so, as most of the briefing focused on the First RFPs.

ings. (Dkt. 90 at 2.) Shortly after the First RFPs were served, the Court entered an Agreed Confidentiality Order. (Dkt. 90 at 3.) After Plaintiff served its responses and objections to the First RFPs, the parties began negotiating search terms · for the retrieval and production of electronically stored information ("ESI"), but were not able to finalize the search terms until May 12, 2006. (Dkt. 90 at 2.) At that time, Plaintiff began the process of "run[ning] over 70 search terms across the ESI of 34 custodians," and "was preparing a significant production of ESI comprising e-mail and attachments." (Dkt. 97 at 5.)

However, at some point during the early stages of the discovery process, Plaintiff realized that complying with Defendants' requests for production would almost certainly require them to produce the confidential business information ("CBI") of non-party HDDE manufacturers, some of whom were Defendants' competitors. As such, Plaintiff "issued a Notice pursuant to 40 C.F.R. Part 2, entitled, 'Production of Confidential Business Information in Pending Enforcement Litigation . . . .,' 81 Fed. Reg. 44303 (July 7, 2016)." (Dkt. 97 at 5.) Predictably, many of these third parties objected to the production of their CBI, arguing that the Agreed Confidentiality Order in this case was insufficient to protect their interests. "On July 20, 2016, the United States informed Navistar that, in light of the concerns raised by non-parties, the United States was temporarily suspending its normal document production until a solution protecting non-party interests could be found." (Dkt. 97 at 6.) For their part, "Defendants made clear that a wholesale exclusion of documents designated as CBI would not be acceptable but nevertheless agreed to resolve the issue by amending the Agreed Confidentiality Order as appropriate." (Dkt. 90 at 3.)

Over the next several months, the parties attempted to resolve all of the competing interests and amend the Agreed Confidentiality Order in a way that satisfied everyone; these attempts were unsuccessful. On September 3, 2016, Plaintiff sent a proposed amended Confidentiality Order to Defendants, noting that Plaintiff was "seeking the consent (or at least non-opposition) of the non-parties . . . as well." (Dkt. 90, Ex. 7.) Although, Defendants "responded with minimal edits less than two weeks later," (Dkt. 90 at 3), Plaintiff was unable to persuade the non-parties to agree to its proposed changes to the Confidentiality Order. When it became clear that Plaintiff would not be producing documents that would divulge CBI of non-parties to the suit, Defendants filed the instant motion to compel, seeking an order requiring "Plaintiff to produce immediately the responsive, non-privileged EPA documents it wrongfully withheld." (Dkt. 90 at 4.) Shortly thereafter, Plaintiff filed its Motion to Expand Scope of Defendants' Motion and Motion for Amendment of the Confidentiality Order (Dkt. 96), which is essentially the converse of Defendants' motion. Not believing that Plaintiff's motion adequately protected their interests, several third parties moved to intervene to protect their CBI from production. (Dkt. 120, 150). Those motions were granted,[2] and the Court took additional briefing on the third parties' positions. All the relevant motions are now fully briefed and ripe for disposition.

## DISCUSSION

Federal Rule of Civil Procedure 26(b)(1) was amended in 2015, and now reads, in part:

---

**2.** The Court also ordered that Defendants must return any CBI produced by the Plaintiff before the intervenors had an opportunity to object until the Court could rule on the instant motions. [Dkt. 137.]

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Materials are relevant for purposes of discovery if they "appear reasonably calculated to lead to the discovery of admissible evidence." *Jenkins v. White Castle Mgmt Co.*, 12 C 7273, 2014 WL 3809763, at *1 n.2 (N.D. Ill. Aug. 4, 2014). The crux of the question before the Court is whether the materials sought by Defendants are relevant to Phase I discovery on liability. In their briefs, Defendants argue that the discovery they seek is relevant because Plaintiff has conceded that the documents are "responsive" and/or relevant, and because it bears on the following four categories: "(1) the real meaning and/or application of the regulations EPA relies upon; (2) EPA's investigation of the HDD engine industry for compliance with the regulations upon which EPA relies; (3) engine inventories during the model years in question; and (4) compliance with emissions standards during the model years in question." (Dkt. 170 at 3.)

 The Court can dispatch with the first argument easily. Regardless of whether Plaintiff may have previously stated that the discovery Defendants seek is relevant, it has subsequently moved off of that position, and the Court must decide the instant motions on the parties' current positions. Defendants are not arguing that

Plaintiff is estopped from challenging the relevance of the documents containing CBI, or otherwise precluded from lodging a challenge to the relevance of those documents. As such, the Court does not believe that Plaintiff's prior inconsistent position means that the discovery that Defendants seek is relevant.[3] That is a decision to be made by the Court.

 On the second argument, Defendants contend that the documents may show that the EPA's regulations are ambiguous, and that the EPA took inconsistent interpretation positions when dealing with other HDDE manufacturers. Ultimately, the liability question relevant to Phase I of discovery will turn on an interpretation of the EPA regulations. This interpretation begins by determining "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Ioffe v. Skokie Motor Sales, Inc.*, 414 F.3d 708, 710–11 (7th Cir. 2005) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)). If the language is unambiguous, the "inquiry must cease," and the court will determine whether the defendants' activity is a violation of the statute or regulation. *See id.* at 711.

 Even when a regulation is ambiguous, the agency's interpretation of the regulation is entitled to deference. *Auer v. Robbins*, 519 U.S. 452, 461–62, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). But this general rule does not apply when the agency's interpretation is "plainly erroneous or inconsistent with the regulation," or "there is reason to suspect that the agency's interpretation 'does not reflect the agency's fair and considered judgment on the mat-

---

**3.** Additionally, the landscape of the case changed significantly. Plaintiff took its original position before it became clear that third

parties would so vigorously object to production of CBI, and Plaintiff was required to balance the competing interests in this case.

ter in question.'" *Christopher v. Smith-Kline Beecham Corp.*, 567 U.S. 142, 132 S.Ct. 2156, 2166, 183 L.Ed.2d 153 (2012) (quoting *Auer*, 519 U.S. at 461–62, 117 S.Ct. 905). "This might occur when the agency's interpretation conflicts with a prior interpretation, or when it appears that the interpretation is nothing more than a convenient litigating position, or a *post hoc* rationalization advanced by an agency seeking to defend past agency action against attack." *Id.* at 2166–67 (internal citations, quotations, and alterations omitted). However, there is a limit to the information relevant to such an inquiry; neither "[t]he suppositions of [agency] staff members expressed in internal memoranda as to requirements of the [statute or regulation]," nor "unpublished opinions of agency staff" are relevant in interpreting a regulation. *United States v. Farley*, 11 F.3d 1385, 1390 (7th Cir. 1993).

The relevance of non-public agency communications was discussed in depth in *Farley*, and the Court believes the reasoning in that case is instructive. In that case, the United States alleged that the defendant had failed to notify the Federal Trade Commission ("FTC") of certain stock purchases, which triggered the reporting requirements of the Hart–Scott–Rodino Act (the "HSR Act") contained in 15 U.S.C. § 18(a)(3)(B). *Farley*, 11 F.3d at 1387. The defendant argued that his stock purchases fell within an exemption for investment-only acquisitions, and "demanded production of 16 years' worth of FTC and Department of Justice files relating to the interpretation and application of the investment-only exemption in the HSR Act." *Id.* at 1388. The government produced documents relating to the exemption and the investigation of the defendant, but withheld 39 documents on the basis of the work product and deliberate process privileges. *Id.* The defendant moved to compel production of those 39 documents,

and the magistrate judge ordered certain documents be produced by the government. *Id.* The government filed objections regarding "memoranda of FTC staff members and discussions of the [defendant's investigation], as well as documents containing FTC staff's views on the investment-only exemption and recommendations for future action." *Id.* at 1388–89. The district judge upheld the magistrate judge's order, and the government appealed to the Seventh Circuit. *Id.* at 1389.

The Seventh Circuit held that the magistrate judge had failed to appropriately apply the relevant test for the deliberative process privilege because she did not balance the defendant's "particularized need for the documents against their nature and the effect of disclosure on the government." *Id.* at 1389–90. However, the Seventh Circuit further held that it "need not remand th[e] case for such a determination" because "the documents at issue are not relevant to the controversy before us." *Id.* at 1390. The Court further explained:

> The FTC documents are definitely not relevant to [defendant's] claim that his purchases fell within the investment-only exemption to the HSR Act's reporting requirements. This defense requires only that the district court interpret that statutory exemption and determine whether Farley's purchases were within the scope of that exemption. The suppositions of FTC staff members expressed in internal memoranda as to requirements of the Act are not pertinent to this task. In its attempt to decipher the meaning of a statute a court may rely on various tools, including official agency interpretations. Courts may not, however, rely on unpublished opinions of agency staff. The documents at issue here clearly fall in the latter category and as such are not germane to the court's inquiry.

*Id.* The Seventh Circuit also stated that such documents would not be relevant to defendant's argument that the FTC regulation defining the investment-only exemption was impermissibly vague, as that was "a matter of statutory interpretation and constitutional analysis, a process which does not require the court to review the postulations of agency staff members as to the meaning of the investment-only exemption." *Id.* at 1391. Finally, the appeals court found that the documents were not relevant to defendant's "claim that the FTC regulations did not provide adequate notice that he was required to report" his initial stock purchase, reasoning that "[p]ost-publication discourse among FTC staff about the meaning of the HSR regulations is irrelevant to the central issue of this defense—determining whether [defendant] should, after reading the regulations, have understood that his purchases did not fall within the definition of the investment-only exemption set out therein." *Id.* at 1391. "To resolve this question, the court need look *only to the language of the regulation and any official, public interpretations of it.*" *Id.* (emphasis added).

█ Throughout the briefs, Defendants argue that it needs the discovery at issue to undermine the EPA's contention that the regulations are clear. The Court does not believe this is so. The District Judge will determine whether the regulations are clear by analyzing the relevant regulatory language. If the District Judge decides, as a matter of law, that the regulatory language is unambiguous and clear on its face, the only remaining decision would be whether Defendants' actions were a violation of the regulations based on the plain language. The activities of third parties would have no bearing on that decision, and communications containing the non-party CBI would have no relevance whatsoever in that case. Defendants' arguments regarding the clarity (or lack thereof) of

the EPA regulations will live and die on their ability to make arguments about the regulatory language itself, and no discovery is likely to provide relevant information on that front.

Of course, it is possible that the District Judge will rule that the regulations are ambiguous; as discussed above, the agency's interpretation would then be given deference, unless the Defendants could show "there is reason to suspect that the agency's interpretation 'does not reflect the agency's fair and considered judgment on the matter in question.'" *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 132 S.Ct. at 2166, 183 L.Ed.2d 153 (2012). Essentially, this is what Defendants are arguing—contrary to the EPA's assertion that there has been a consistent interpretation that HDDEs must be completely assembled (*i.e.*, produced) before the COC requirements attach, EPA has actually reached several different conclusions on this issue over the years, and, therefore, does not deserve deference. Defendants have raised four types of documents that it believes may provide relevant information relating to this argument. The Court will discuss the four categories of documents raised by Defendants below.

█ First, Defendants claim that they need "documents from EPA relating to the meaning, purpose, interpretation and/or application of the precise regulatory terms EPA relies upon because such documents bear on the defenses that [the EPA regulation cited by Planitiff] does not address the question at bar, does not clearly set forth a 'completely assembled' rule, and has not been interpreted in a 'consistent, decades-long' way that support deference." (Dkt. 170 at 4.) The Court does not believe that communications containing CBI of non-parties could be relevant to such inquiries. To determine whether the

regulation cited by Plaintiff bears on the question posed in this lawsuit (or whether it clearly sets forth a 'completely assembled' rule), the only relevant information would be the language of the rule itself, and whether Defendants' activity violated that rule. It is unclear how information from other HDDE manufacturers would help answer these questions at all, and Defendants have not articulated anything that persuades the Court otherwise.[4] Regarding the consistency of the EPA's interpretations, as noted in *Farley*, the only relevant information regarding an agency's interpretation of its regulations are the public, official interpretations.[5] What agency staff may or may not have said to third parties privately in the course of information gathering is not necessarily indicative of an agency's public interpretation of the regulations. As such, those communications would not be relevant to this inquiry. To the extent that Defendants are correct that Plaintiff's positions are constantly shifting, they would only be able to prove that by pointing to the agency's official policies. Therefore, communications between the EPA and non-party HDDE manufacturers would not be relevant to the Phase I discovery issues and need not be produced.

Similarly, Defendants' attempt to obtain documents related to Requests for Information and Notices of Violation is equally unavailing. Again, Defendants argue that

"this category of documents ... could critically undermine both EPA's claim of regulatory clarity, as well as its claim that it provided a 'consistent, decades-long' answer to 'when is an engine produced.'" (Dkt. 170 at 6.) The clarity issue has been dispatched several times already in this opinion. That is a matter that will be decided by the District Judge by reviewing the plain language of the regulations and will not be aided by any discovery. As for the consistency of the EPA's regulatory interpretation, the same reasoning described above also applies. Defendants also argue that these documents could also be relevant to proving their affirmative defense of fair notice. However, the Seventh Circuit has explicitly held that the only relevant information in assessing that affirmative defense is "language of the regulation and any official, public interpretations of it." *Farley*, 11 F.3d at 1391. The Court finds that these documents also would not be relevant.

 Next, Defendants seek "EPA documents regarding engine inventories to further confirm that no EPA regulation set forth a 'completely assembled' rule," asserting that "[t]he relevance of such documents is very similar to the relevance of documents in category two above." (Dkt. 170 at 6.) Since the Court has already rejected those arguments, it will not belabor the point here. Defendants also seem

4. The Court finds it particularly peculiar that Defendants have failed to do so, as they had access to documents containing CBI before this Court ordered them to return those documents to Plaintiff pending the decision on the instant motions. Presumably, if Defendants had been able to glean any relevant information from these materials, it would have raised such arguments, but it did not do so. This fact bolsters the Court's finding that such documents would not contain information relevant to Phase I of this suit.

5. The Court recognizes that the documents in *Farley* were internal FTC memoranda, whereas the documents Defendants seek are communications between the EPA and other HDDE manufacturers, but believes that is a distinction without a difference. Like the documents in *Farley*, the communications between the EPA and other manufacturers do not reflect the official, public agency interpretation of the relevant statutes, and would not be relevant to the issue of whether the EPA has changed its interpretation of the regulations over time.

to argue that documents relating to the inventory of any partially complete HDDE engines might show that other manufacturers were unclear on the EPA regulations, thereby undermining the EPA's request for deference. However, as discussed above, the only ways to undermine agency deference would be showing that the agency's interpretation is plainly erroneous or that it does not reflect the agency's fair and considered judgment. Other HDDE manufacturers' views of the regulation would not affect either of these considerations. If the agency's interpretation is plainly erroneous that is a decision that the District Court will be able to make by comparing the interpretation to the regulatory language. And the fact that industry members are confused would not tend to show that the agency's current position is anything other than a good faith reading of the regulations; the proof on that issue be derived from analysis of the EPA's previous public interpretations (*i.e.*, showing the agency's interpretation in this suit conflicts with a prior interpretation) or previous agency activity (*i.e.*, proof of a *post hoc* rationalization to defend past agency action from attack). The documents relating to engine inventory would have no bearing on these legal questions, and are not relevant to Phase I discovery.

■ Finally, Defendants seek documents related to EPA certification of emission control technology of other on-highway HDDE manufacturers to show that Defendants' engines reduced emissions more efficiently than engines using other manufacturers' technology. Whether or not that is true has no bearing on the issue at

bar – whether Defendants' engines fell short of the emission standards for the 2010 model year. That determination can only be made by analyzing the performance of the relevant engines measured against emission standards promulgated by the EPA. No other information is relevant. Therefore, the Court rejects Defendants argument on these documents as well.[6]

### CONCLUSION

In sum, Defendants have failed to show why documents containing other HDDE manufacturers' CBI would be relevant to any issue in Phase I of discovery. Therefore, for the foregoing reasons Defendants' Motion to Compel [Dkt. 89] is denied. Plaintiff's Motion to Expand the Scope of Defendants' Motion and for Amendment of the Confidentiality Order [Dkt. 96] is denied as moot.

---

6. Even if this Court were to rule that the communications between EPA and third parties were relevant because they disclosed the EPA's non-public interpretation of the regulations, the CBI contained in such communications would not be relevant to that question. As such, Plaintiff would be within its rights to

insist that it manually redact such information, which would be an extremely burdensome task that would likely outweigh the relatively slight relevance of the communications. However, the Court need not reach the burden issue here, as it does not believe the communications are relevant at all.